[Cite as *In re C.C.-L.*, 2017-Ohio-9296.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: C.C.-L.

C.A. No. 28666

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. DN 16-05-0399

DECISION AND JOURNAL ENTRY

Dated: December 29, 2017

CALLAHAN, Judge.

{¶1} Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that granted legal custody of her child C.C.-L. to Father. This Court affirms.

I.

{¶2} Mother is the biological mother of C.C.-L. (d.o.b. 12/6/11) and R.C. (d.o.b. 3/17/16). Father is the biological father of C.C.-L., as well as two other children by his current wife. Mother and Father shared parenting of C.C.-L. pursuant to a domestic relations court order. Neither R.C., nor her biological father, is a party to this appeal.

{¶3} Shortly after R.C. was born, she suffered symptoms of withdrawal due to Mother's drug use during pregnancy. The infant was administered morphine in the NICU to abate her symptoms. Based on these conditions, Summit County Children Services Board ("CSB") filed complaints, alleging R.C. to be an abused and dependent child, and C.C.-L. to be

a dependent child. A few days later, the parties stipulated that CSB be granted an interim order of protective supervision of the children, while maintaining them in Mother's home.

{¶4} At the adjudicatory hearing, the parties entered into negotiations and stipulated that both children were dependent. CSB dismissed the allegation of abuse regarding R.C. Father moved for temporary custody of C.C.-L. After the initial dispositional hearing, the juvenile court maintained C.C.-L. in Mother's legal custody under an order of protective supervision to CSB. The agency's case plan was adopted as the order of the court. The case plan included objectives for Mother and R.C.'s father, specifically that the two submit to a drug and alcohol assessment and follow all treatment recommendations. There were no case plan objectives for Father.

{¶5} Two-and-a-half months later, Father again filed a motion for temporary custody of C.C.-L. The guardian ad litem recommended that the court place the child in Father's temporary custody. After a subsequent review hearing, the magistrate granted Father's motion and placed C.C.-L. in the temporary custody of Father. No order of protective supervision was issued as to C.C.-L.; although R.C. remained under the protective supervision of the agency, as that child remained in Mother's care. The magistrate further ordered that Mother would have supervised visitation with C.C.-L. twice a week for two hours each day. Mother did not file objections to the magistrate's decision.

{¶6} Prior to the next review hearing, Father and Mother each filed a motion for legal custody of C.C.-L. The magistrate held a hearing on the parents' competing motions. At the hearing, CSB orally moved to terminate the order of protective supervision in effect for R.C., but otherwise did not seek to modify the current custodial dispositions of the children. At the conclusion of the hearing, the magistrate issued a decision granting Father's motion and

awarding legal custody of C.C.-L. to him. The magistrate further ordered that Mother would continue to have supervised visitations with the child, but that she could petition the court for unsupervised visits once she had successfully completed a substance abuse assessment and all treatment recommendations.

{¶7} Mother filed timely objections to the magistrate's decision. She argued that the magistrate did not consider two best interest factors, specifically (1) the child's interactions and interrelationships with Mother and R.C., and (2) the child's custodial history. In addition, Mother argued that the magistrate erred because the evidence demonstrated that she had remedied the conditions that led to the removal of C.C.-L. Although a transcript of the proceedings was later filed with the juvenile court, Mother did not supplement her objections with citations to the record. Father responded in opposition to Mother's objections, while CSB took no position and declined to file a brief.

{¶8} The juvenile court overruled Mother's objections. It found that the evidence relating to the best interest factors in R.C. 2151.414(D)(1)(a-e) demonstrated that an award of legal custody to Father was in the best interest of C.C.-L. The juvenile court further ordered that Mother would continue to have supervised visits with the child, but that she could petition for unsupervised visitation after successfully completing a substance abuse assessment and following all treatment recommendations. Mother filed a timely appeal in which she raises three assignments of error for review. She consolidates her first two assignments of error; and this Court does likewise, as they implicate related issues.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN OVERRULING MOTHER'S OBJECTIONS TO THE MAGISTRATE'S DECISION AS THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT IT IS IN THE MINOR CHILD'S BEST INTEREST THAT SHE BE PLACED IN THE LEGAL CUSTODY OF HER FATHER.

{¶9} Mother argues that the juvenile court's award of legal custody of C.C.-L. to Father was contrary to the best interest of the child and was against the manifest weight of the evidence. This Court disagrees.

> On appeal, an award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence. Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. In other words, when the best interest of the child is established by the greater weight of the evidence, the trial court does not have discretion to enter a judgment that is adverse to that interest. Thus, our standard of review is whether a legal custody decision is against the manifest weight of the evidence.

(Internal citations and quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7.

{¶10} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the

evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶11} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. In that regard, the juvenile court is guided by the best interest factors enunciated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in R.C. 2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 9th Dist. Summit Nos. 26976, 26977, 2014-Ohio-2748, ¶ 16.

{¶12} Mother argues that the juvenile court's finding that legal custody to Father was in the child's best interest was against the manifest weight of the evidence, because the juvenile court failed to consider the wishes of the child pursuant to R.C. 2151.414(D)(1)(b). The statute requires consideration of "[t]he wishes of the child, as expressed directly by the child *or through the child's guardian ad litem, with due regard for the maturity of the child*[.]" (Emphasis added.) *Id.*

{¶13} In this case, the juvenile court made an express finding regarding the wishes of the child. The trial court found that the guardian ad litem reported that she purposefully did not ask the five-year old child with whom she wished to live, because the guardian strongly suspected that the child had been coached. In fact, the evidence supported the reasonable inferences that Mother had coached C.C.-L. to report that she had been strangled by her father and to inform the caseworker that two hours of visitation with Mother was not enough. The guardian ad litem further reported that the child was not mature enough to definitively express a consistent preference. The guardian opined that the young child's expressed preference would likely be to remain where she was at the time she was asked, whether that be with Mother, Father, or even grandparents with whom she had a close relationship. With these considerations in mind, the guardian ad litem recommended the disposition, specifically legal custody to Father, based on the best interest of the child as evidenced by her investigation. Accordingly, the juvenile court properly considered and weighed the evidence relating to the wishes of the child.

{¶14} Although Mother does not challenge the weight of the evidence relating to the other best interest factors, this Court concludes that a preponderance of the evidence supports the award of legal custody to Father. The child had acclimated well into Father's home and had developed a close bond with Father, her stepmother, and two half-siblings who were close in age to C.C.-L. *See* R.C. 2151.414(D)(1)(a). On the other hand, although she had a close relationship with Mother, C.C.-L. and the one year old R.C. were at significantly different developmental stages, so their interactions were more limited. *See id.* There was no evidence regarding the relationship between C.C.-L. and Mother's live-in paramour who was the father of R.C. *See id.*

{¶15} Although C.C.-L. had been living with Mother when this case was initiated, Mother and Father shared custody of the child pursuant to a domestic relations court order. *See* R.C. 2151.414(D)(1)(c). During the pendency of the case below, the magistrate awarded Father temporary custody after a review hearing; and the child remained with him for the remainder of the case, while Mother was limited to supervised visitation. *See id.* Mother did not file objections to that decision, and no transcript of the review hearing is contained in the record.

{¶16} The child is in a safe, secure, and stable environment with Father, his wife, and the child's half-siblings. *See* R.C. 2151.414(D)(1)(d). Stepmother works with the child on a daily basis to prepare her for kindergarten. C.C.-L. has routine and consistency in her life, including a set bedtime. While she was a very picky eater and on the low end of developmental size charts while living with Mother, Father has worked to incorporate a greater variety of foods into the child's diet, and she has begun to gain weight. Significantly, Father ensures that the child receives in-home counseling to address issues with lying. While issues remain, Father has seen substantial improvement. There are no concerns that Father may have attempted to physically harm the child. The guardian ad litem reported that the counselor could put no stock in the child's prior allegation that Father had strangled her. In fact, the guardian reported that the child is not at all fearful of Father and sits on his lap without hesitation. The caseworker testified that the consistency the child has in Father's home is important for healthy development and that another disruption in her life could negatively impact the progress she has made. *See id.*

{¶17} On the other hand, Mother was recently evicted for failing to pay rent. Although she quickly obtained a new residence, she had multiple residences during the pendency of the case. Most significantly, Mother was inconsistent throughout the case in addressing her sole

case plan objective. CSB initiated the case based on Mother's drug use during pregnancy. Further investigation demonstrated that Mother had a history of substance abuse. Mother was required to submit to weekly drug screens. Although the four screens to which she submitted from November 2016 through mid-February 2017 were all negative, she failed to submit to three quarters of her required screens. In addition, despite the recommendation after assessment that she participate in outpatient drug treatment, Mother failed to initiate any such treatment. In fact, she testified that she did not believe that she needed treatment. The caseworker's lingering concern was whether or not Mother had attained sobriety, given her failure to consistently submit to weekly drug screens. Accordingly, it remained unclear whether Mother's home was drug-free. *See id*.

{¶18} No R.C. 2151.414(E)(7-11) factors are applicable to this case. *See* R.C. 2151.414(D)(1)(e).

{¶19} Based on a review of the evidence, this is not the exceptional case where the finder of fact clearly lost its way and created a manifest miscarriage of justice in awarding legal custody of C.C.-L. to Father. The evidence established that the child was thriving in Father's home, where all her needs were being met. On the other hand, there was little indication that Mother took seriously the issue giving rise to the child's dependency. Under the circumstances, the juvenile court's finding that an award of legal custody to Father was in the best interest of C.C.-L was not against the manifest weight of the evidence.

{¶20} To the extent that Mother argues that the guardian ad litem failed to fulfill any responsibilities required by Sup.R. 48, she has forfeited that argument by failing to object below. *See* Juv.R. 40(D)(3)(b)(iv). Nevertheless, as discussed above, a review of the record

indicates that the guardian ad litem reasonably explained why she did not ask the young child regarding her wishes.

{¶21}  Mother's first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN REQUIRING MOTHER TO HAVE SUPERVISED VISITATION AND IN NOT ESTABLISHING A HOLIDAY VISITATION SCHEDULE.

{¶22}  Mother argues that the juvenile court's order granting her supervised visitation and no holiday visitation was against the manifest weight of the evidence.  Mother failed to preserve the issue for appeal by failing to object below.  Although she filed objections to the magistrate's decision, she limited those objections to evidence relating to whether legal custody to Father was in the child's best interest.  She failed to challenge the visitation order.

{¶23}  Juv.R. 40(D)(3)(b)(iv) provides:

Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).

Therefore, "[w]hen a party fails to raise an issue in the party's objections to the magistrate's decision, it may not be raised for the first time on appeal."  *Varner v. Varner*, 170 Ohio App.3d 448, 2007-Ohio-675, ¶ 22 (9th Dist.).  As Mother failed to challenge the visitation order in her objections, she has forfeited the issue on appeal, except for a claim of plain error.  *See*  Juv.R. 40(D)(3)(b)(iv).

{¶24}  Moreover, Mother has not alleged plain error.  This Court declines to undertake such an analysis on her behalf.  *See State v. Bowerman*, 9th Dist. Medina No. 13CA0059-M, 2014-Ohio-4264, ¶ 16.  Mother's third assignment of error is overruled.

III.

{¶25} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
CONCURS.

CARR, J.
CONCURRING.

{¶26} I concur with the majority in affirming the award of legal custody to Father. I write separately, however, to note that although I agree that it is in the best interest of C.C.-L. to be in Father's legal custody, I am concerned about the appearance of inconsistency in this case. Mother continues to be limited to supervised visitation with C.C.-L., while she has attained legal custody of R.C. free of any oversight, despite ongoing concerns. For example, although Mother had tested negative for drug use, she only submitted one-quarter of her required urine screens. Nevertheless, the agency advocated terminating ongoing protective supervision despite the fact that Mother's drug use during her pregnancy with R.C. was what precipitated the agency's involvement. In addition, Mother's housing had been somewhat unstable throughout the case, and resulted in a recent eviction. Furthermore, Mother demonstrated an inclination to deceive to further her own interests, by coaching C.C.-L. to fabricate accusations against Father and to seek additional time with Mother. Accordingly, while I concur that the juvenile court's judgment awarding legal custody to Father was not against the manifest weight of the evidence, I remain concerned by the lack of ongoing protective supervision of R.C., when Mother was only permitted supervised visitations with C.C.-L. While there may be some rationale that is not readily apparent from the record, on the face of it, the result seems inconsistent.

APPEARANCES:

JAMES E. BRIGHTBILL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

MICHAEL J. WARKO, Attorney at Law, for Appellee.

MARY ELLEN LESLIE, Guardian ad Litem.