[Cite as *Burks v. Burks*, 2019-Ohio-4292.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| RUSSELL C. BURKS | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28349 |
| | : | |
| v. | : | Trial Court Case No. 2014-UJ-04 |
| | : | |
| ANN M. BURKS | : | (Domestic Relations Appeal) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of October, 2019.

. . . . . . . . . .

KEITH R. KEARNEY, Atty. Reg. No. 0003191, 2160 Kettering Tower, 40 North Main Street, Dayton, Ohio 45423
      Attorney for Plaintiff-Appellee

ANN M. BURKS, 125 Bayberry Drive, Springboro, Ohio 45066
      Defendant-Appellant, Pro Se

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Ann M. Burks appeals pro se from the trial court's decision and judgment that, among other things, overruled a motion to modify her child-support obligation and found her in civil contempt for interfering with appellee Russell Burks' parenting time.

{¶ 2} Ann advances two assignments of error.[1] First, she challenges the trial court's refusal to modify her child-support obligation. Second, she disputes the contempt finding.

{¶ 3} The record reflects that the parties divorced in Virginia in 2010. They obtained joint custody of their minor child. After the divorce decree was registered in Montgomery County, Ohio, a shared-parenting plan was adopted. Thereafter, in August 2016, a magistrate terminated shared parenting and designated Russell the child's residential parent and legal custodian. The magistrate also ordered Ann to pay child support of $335 per month. The trial court adopted the magistrate's decision. The parties later returned to court on various motions. At that time, the magistrate increased Ann's child-support obligation to $571 per month based on Russell's testimony that his child-care costs had increased after shared parenting ended and he obtained legal custody. Ann objected to the increase. The trial court overruled the objection, concluding that the magistrate did not err in accepting Russell's testimony about a child-care tuition increase. Mother appealed. She challenged the increase and raised one other issue. We affirmed the trial court's judgment in *Burks v. Burks*, 2d Dist. Montgomery No. 27734, 2018-Ohio-670 ("*Burks I*"). With regard to child support, we upheld the trial court's decision to credit Russell with $6,500 in annual child-care expenses while retaining a downward deviation

---

[1] For purposes of clarity, we will refer to the parties by their first names.

in Ann's favor based on a week-to-week parenting-time allocation. *Id.* at ¶ 22-27. We specifically upheld the trial court's decision to credit Russell's testimony about his child-care expenses without supporting documentation. *Id.* at ¶ 25.

**{¶ 4}** The parties returned to court for another hearing before the magistrate on October 15, 2018 to resolve numerous pending motions. As relevant here, the magistrate heard testimony on Ann's motion to modify child support and on Russell's motion for a contempt finding based on Ann's interference with his parenting time. The magistrate overruled Ann's motion regarding child support and sustained Russell's motion to hold Ann in civil contempt. (Doc. # 157.) The trial court subsequently overruled Ann's objections. It agreed with the magistrate's decision overruling Ann's motion to modify child support and the magistrate's contempt finding. (Doc. # 179 at 5-6, 8.) This appeal followed.

**{¶ 5}** In her first assignment of error, Ann contends the trial court "arbitrarily" overruled her motion to modify child support. She claims the trial court refused to recognize multiple changes in circumstances that warrant a downward deviation in her support obligation. In support of her modification request, Ann specifically cites four factors under R.C. 3119.23 that she believes justify a deviation from her support obligation under the child-support computation worksheet: (1) her extended parenting time, (2) a disparity of income between the parties or households, (3) benefits that either parent receives from remarriage, and (4) the standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued.

**{¶ 6}** In its decision regarding modification of child support, the magistrate stated:

Although much of what Ann complains about in this branch [of her motion] is in relation to the previous determination of child support, as this magistrate stated on the record, the present matter is to determine what changes relating to child support have taken place since then. The only direct evidence regarding child support was Russell's testimony about his income. The magistrate therefore infers that the other facts (such as Ann's income, and child care expenses) have remained the same. Based on that testimony, and using the other facts from prior child support worksheet, this magistrate finds that (as reflected by the attached child support worksheet) there has not been a change of circumstances in terms of child support and that therefore Branch 2 should be overruled.

(Doc. # 157 at 11-12.)

{¶ 7} In overruling Ann's objection to the magistrate's denial of her motion to modify child support, the trial court reasoned:

Ann contended that the magistrate erred in not modifying her child support obligation, however, the magistrate found that she presented no evidence of any change in circumstances to support a change. Ann's objection concerned her belief that Russell lied about his childcare expenses for purposes of the child support computation. Ann argued "there is now new evidence" regarding Russell's declared childcare expenses. Ann commented in her objections that she felt "the magistrate's bias towards" her prevented her from presenting evidence of the changes relating to childcare expenses.

Ann, self-represented, attempted to question Russell about his income and childcare expenses. The magistrate did prevent Ann from testifying during her cross-examination of Russell and from questioning Russell as to events and figures which predated the latest child support order filed August 25, 2017. No figures were offered into evidence that would indicate a change from what was reflected as the childcare costs for the current order for child support. Russell testified that he couldn't recall what he paid for childcare in 2017 and the magistrate correctly limited the testimony to post August 25, 2017. Ann alleged in her objections that [their child] had not attended a daycare program, for which Russell was claiming daycare expenses, since mid-August 2018 and that the magistrate did not consider her own childcare expenses in the computation. Unfortunately, again, the magistrate and the court cannot consider the allegations of fact, like Ann's statement "there are no expenses," which are made in pleadings. Rather than providing evidence that Russell's income and childcare expenses had changed since August 25, 2017, Ann attempted to show that the figures used in 2017 were incorrect. That issue was addressed in the objections and appeal from the August 25, 2017 Decision and Judgment. The court agrees with the magistrate that there was no evidence presented which would support a modification of the child support obligation. This objection is not well taken.

(Doc. # 179 at 5-6.)

**{¶ 8}** We review a trial court's ruling on a motion to modify child support for an

abuse of discretion. *Matlock v. Matlock*, 2d Dist. Montgomery No. 28278, 2019-Ohio-2131, ¶ 12. A trial court abuses its discretion by making a decision that is unreasonable. *Bass v. Bass*, 2d Dist. Montgomery No. 28217, 2019-Ohio-2746, ¶ 24. An unreasonable decision is one not supported by a sound reasoning process. *Id.* Pursuant to R.C. 3119.79(C), child support may be modified if a substantial change in circumstances exists that was not contemplated when a prior support order was issued. "Under R.C. 3119.79(A), if a 10% deviation exists based on 'the recalculated amount that would be required to be paid under the schedule and the applicable worksheet,' the court is required to consider this as 'as a change of circumstance substantial enough to require a modification of the child support amount.' " *Matlock* at ¶ 13.

{¶ 9} In addition, R.C. 3119.22 authorizes a trial court to deviate from the amount of support calculated using the applicable child-support worksheet. Such a deviation is permitted if a trial court determines, based on the criteria found in R.C. 3119.23, "that the amount calculated pursuant to the basic child support schedule and the applicable worksheet would be unjust or inappropriate and therefore not be in the best interest of the child." Again, we apply abuse-of-discretion review to a trial court's decision whether to deviate from child support owed under the applicable worksheet. *Hamby v. Hamby*, 2d Dist. Montgomery No. 26506, 2015-Ohio-1042, ¶ 16.

{¶ 10} With the foregoing standards in mind, we see no abuse of discretion in the trial court's ruling. Ann first cites "extended parenting time" as a change of circumstances that warrants a downward deviation. But the record reflects that she has enjoyed equal parenting time with Russell since her child-support obligation was established. Indeed, the trial court previously granted her a downward deviation based on that fact, and the

deviation remains in effect. (*See* Line 27a of Child Support Computation Worksheet accompanying Doc. # 157.) Therefore, Ann's extended parenting time does not support a further modification of her child-support obligation.

{¶ 11} Ann also contends the trial court failed to recognize a disparity in the parties' household incomes, financial benefits Russell has received from remarriage, and differences in their standard of living. The magistrate and the trial court did note that Russell's income had increased to $199,000, as testified to by Russell and as reflected in an updated child-support worksheet that showed Ann's income remaining steady at $131,524. Ann's argument appears to be that the trial court should have included Russell's new wife's income as well. Russell estimated that his total "family income" was $225,000. (Tr. at 45.) When asked by Ann whether he would be surprised if it was $246,463.86, Russell responded that he would not be surprised. (*Id.*) Regardless, the trial court did not err in failing to include Russell's new wife's income in the child-support worksheet. *See, e.g.*, R.C. 3119.05(E) (stating that for child-support computation purposes "[w]hen the court * * * calculates the annual income of a parent, it shall not include any income earned by the spouse of that parent").

{¶ 12} Although a trial court may consider disparity in income "between the parties or households" and benefits a party has received from remarriage in determining whether to grant a deviation from the child-support worksheet, *see* R.C. 3119.23, the trial court was not obligated to grant such a deviation and nothing in the record suggests that it failed to consider the parties' household incomes and financial benefits Russell realized through his remarriage. The magistrate allowed Ann to question Russell about his "family income," and the magistrate and the trial court presumably considered that information.

(Tr. at 45.) We note too that Ann presented no testimony or other evidence demonstrating the parties' respective standards of living or the standard of living of their child. On appeal, Ann claims she resides in a $180,000 home whereas Russell lives in a custom-built $621,000 home. The hearing transcript, however, contains no testimony about the parties' homes. In any event, home value is just one component of a person's standard of living.

{¶ 13} Ann next contends the trial court should have reduced her child support because Russell no longer has child-care expenses of $6,500 per year. Ann argues that Russell never provided any documentation to support such expenses in the first place. She further asserts that at the October 15, 2018 hearing he did not know how much he paid in 2017. Finally, she claims Russell testified during this hearing about their child no longer needing direct supervision, demonstrating that he no longer pays for child care.

{¶ 14} Once again, we find Ann's argument to be unpersuasive. In an August 25, 2017 decision and judgment, the trial court previously accepted Russell's testimony that his expenses for their child's participation in a "Goddard after school program" had increased from $4,800 annually to $6,500 annually. This increase served at least in part as a basis for increasing Ann's child support obligation. On appeal in *Burks I*, we affirmed the trial court's decision to credit Russell's testimony about child-care expenses despite the lack of supporting documentation. To the extent that Ann now objects to Russell originally claiming child-care expenses of $6,500 and failing to provide documentation, those issues have been decided. Moreover, Ann failed to establish at the most recent hearing that Russell no longer has child-care expenses. When asked how much he paid Goddard in 2017 Russell testified that he could not say because he did not have the totals in front of him. (Tr. at 50.) Ann then asked Russell whether he had given her "daycare

records" for their child in February 2018. He responded that he had done so. (*Id.* at 52.) Russell also stated that he had started allowing their child to stay home alone after school in September 2018. (*Id.* at 62.) Russell further testified that he had given Ann all of the documents she had requested in discovery to prepare for the hearing. (*Id.* at 75-79, 114-116.) In her own testimony, Ann disputed this claim. She stated that she had not been given all of the documents she needed. (*Id.* at 90.) Ultimately, the trial court found that Ann had failed to prove Russell's non-compliance with court-ordered discovery. (Doc. # 179 at 7.)

{¶ 15} The strongest evidence suggesting that Russell no longer has child-care expenses was his testimony about allowing their child to start staying home alone after school in September 2018. Unfortunately, Russell was not asked whether this change eliminated or even reduced his need for child care or his use of the Goddard program. The record contains no testimony about which days, or how often, the Goddard after school program had been used in the past or about whether such use continued at the time of the October 15, 2018 hearing. Without more, we cannot say the trial court abused its discretion in declining to infer that Russell no longer had child-care expenses simply because he allowed the parties' child to start staying home alone in September 2018. The first assignment of error is overruled.

{¶ 16} In her second assignment of error, Ann contends the trial court erred in finding her in civil contempt for interfering with Russell's parenting time.

{¶ 17} The trial court's contempt finding involved Ann's decision to take the parties' child to Michigan for spring break in 2018 and not returning for Easter Sunday. The record reflects that Easter Sunday fell within the child's spring break from school that year. (Tr.

at 125-126.) Russell advised Ann before her trip that Easter was his parenting time that year. (*Id.* at 123.) Ann responded that she was taking the child to Michigan for spring break and would be in Michigan on Easter. (*Id.* at 124-125.) After discovering Ann's plans, Russell told her again that Easter was his parenting time. (*Id.* at 126.) Ann responded by telling him that she had parenting time with the child over spring break. (*Id.* at 126.) Russell then advised her that Easter came during spring break and that his parenting time had priority. To accommodate her trip, however, he offered to give Ann his Easter parenting time in exchange for another date. (*Id.* at 126.) Ann responded by citing the trial court's Standard Order of Parenting Time. She took the child to Michigan for spring break. She did not return for Easter Sunday and did not give Russell another date. (*Id.* at 127-129.)

{¶ 18} At the time of the parties' dispute about spring break and Easter parenting time, they were operating under the terms of an August 26, 2016 judgment entry, which provided as follows regarding parenting time:

> 2. Ann's parenting time shall be according to the court's Standard Order of parenting time, attached and incorporated herein, with the modification that the provisions set forth below from the previous shared parenting plan shall continue in effect:
>
> * * *
>
> d) Spring Break: * * * The Mother shall have the child for spring-break in the even-numbered years. * * *

(Doc. # 157 at 2-3.)

{¶ 19} The Standard Order of Parenting Time gave Russell parenting time with the

parties' child on Easter Sunday in even-numbered years. As noted above, this created a conflict because Easter Sunday came during the child's spring break in 2018. Notably, however, the Standard Order included a conflict-resolution provision that stated: "In the event of conflicting dates and times, the following is the order of priority: Children's Birthdays; Parent's Day; Holidays; Summer/Breaks; Weekends; then Weekdays." (Doc. # 147 at Standard Order, adopted by the trial court at Doc. # 157, p. 1-2.)

{¶ 20} In the present case, the magistrate found that Russell was entitled to Easter parenting time under the conflict-resolution provision. The magistrate found Ann in civil contempt for interfering with that parenting time. The magistrate imposed a five-day suspended jail sentence and gave Ann an opportunity to purge the contempt by giving Russell the following Easter Sunday and paying $500 of his attorney fees plus administrative fees. (Doc. # 157 at 8.) In rejecting Ann's objection to this ruling, the trial court reasoned:

> Ann objects to being found in contempt for the failure to abide by the parenting time orders. As she stated in her Supplemental Objections, the current parenting time was ordered according to the Montgomery County Standard Order of Parenting Time, with modifications. Ann's parenting time for Spring Break in 2018 coincided with Russell's parenting time that year for Easter. Ann argued that the modifications as set forth in the August 26, 2016 Judgment Entry adopting the Magistrate's Decision take precedence over the Standard Order. Such is not the case. The parenting time was ordered in accordance with the Standard Order with modifications. However, [but] for the modifications, all other terms of the Standard Order

govern. The court agrees that the evidence was sufficient to support a finding of contempt against Ann for her failure to abide by the terms of the Standard Order of Parenting Time. * * *

(Doc. # 179 at 8.)

{¶ 21} On appeal, Ann contends court-ordered modifications to the Standard Order took precedence over it. Therefore, she claims she was not in contempt. She also asserts that the record lacks evidence to support a contempt finding and that language in the controlling court order regarding parenting time was ambiguous. For these reasons, she argues that the trial court erred in finding her in civil contempt.

{¶ 22} Upon review, we find Ann's assignment of error to be unpersuasive. A civil contempt action requires clear and convincing evidence that the alleged contemnor violated a court order. *Johnson v. Ulmer*, 2d Dist. Greene No. 2013 CA 9, 2013-Ohio-4240, ¶ 32, quoting *DeWitt v. DeWitt*, 2d Dist. Darke No. 1386, 1996 WL 125920, *2 (March 22, 1996). But evidence that the violation was purposeful, willful, or intentional is not required. *Id.* Once a violation is established, the defendant bears the burden to prove an inability to comply. *Id.* Absent proof of the defendant's inability to comply, a civil contempt finding is appropriate. *Id.*

{¶ 23} Here the August 26, 2016 court order unambiguously stated that the Standard Order governed parenting time, subject to certain specified modifications. One of those modifications was that Ann was entitled to parenting time for spring break in even-numbered years. As Russell pointed out, this created a conflict because the Standard Order granted him parenting time for Easter Sunday in 2018, and Easter came during spring break. That being so, the parties were required to look to the conflict-

resolution provision in the Standard Order, which remained in operation and had not been modified by anything. As set forth above, the conflict-resolution provision made clear that, in the event of a conflict, "holidays" took precedence over "breaks." Therefore, Russell's Easter Sunday holiday parenting time took precedence over Ann's spring break parenting time. Because Ann deprived Russell of his Easter parenting time, the record contains clear and convincing evidence that she violated a court order. And the record contains no evidence to support a finding that she lacked the ability to comply with the order. Therefore, the trial court did not err in finding her in civil contempt. Her second assignment of error is overruled.

{¶ 24} The judgment of the Montgomery County Common Pleas Court, Domestic Relations Division, is affirmed.

. . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies sent to:

Keith R. Kearney
Ann M. Burks
Hon. Timothy D. Wood