[Cite as *In re M.J.M.*, 2019-Ohio-4799.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

IN RE: M.J.M.

:
:
:    Appellate Case No. 28396
:
:    Trial Court Case No. 2016-3599
:
:    (Appeal from Common Pleas Court –
:    Juvenile Division)
:
:

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of November, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Appellee, Montgomery County Children Services

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Beavercreek, Ohio 45434
    Attorney for Appellant, Father

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Petitioner-appellant, the father of M.J.M. ("Father"), appeals from the judgment of the Montgomery County Court of Common Pleas, Juvenile Division, denying his motion to terminate or modify his child support obligation. In support of his appeal, Father asserts that pursuant to R.C. 3119.22 and R.C. 3119.23, his child support obligation should have been reduced to $0 due to monthly Social Security benefits received by M.J.M. and funds that M.J.M. will receive from her guardianship when she turns 18 years old. For the reasons outlined below, the judgment of the trial court denying Father's motion to terminate or modify child support will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} M.J.M., the minor child at issue in this appeal, was born in March 2002. Father and M.J.M.'s mother ("Mother") were married at the time of M.J.M.'s birth, but divorced in December 2009. After the divorce, Mother became M.J.M.'s primary custodian and Father was awarded standard visitation time.

{¶ 3} As M.J.M. grew older, she would often refuse to go to Father's house when it became his time to exercise visitation. In February 2015, M.J.M. alleged that Father had sexually abused her. Law enforcement in Clermont County, Ohio, investigated the allegations made by M.J.M., but ultimately did not file any charges against Father. In July 2015, Mother sent M.J.M. to live with her maternal grandfather ("Maternal Grandfather"). This move was the result of an unresolved conflict between Mother's boyfriend and M.J.M. Father had not seen M.J.M. since May 2014 and had not spoken to her since April 2015.

{¶ 4} On October 6, 2015, Mother died as a result of suicide. Following Mother's passing, M.J.M. continued to reside with Maternal Grandfather. On August 12, 2016, a juvenile court magistrate issued a decision finding that M.J.M. was a dependent child and awarded temporary custody of M.J.M. to her maternal aunt ("Maternal Aunt"), as Maternal Grandfather had difficulty caring for M.J.M. due to her special mental and physical needs. In the decision, the magistrate also ordered Father not to have visitation with M.J.M. until recommended by the child's therapist. Father filed objections to the magistrate's decision, which were overruled by the juvenile court. After the juvenile court adopted the magistrate's decision, Father appealed. On May 25, 2018, this court affirmed the judgment of the juvenile court in *In re M.M.*, 2d Dist. Montgomery Nos. 27722 and 27724, 2018-Ohio-2034.

{¶ 5} On September 8, 2017, while the appeal in *In re M.M.* was pending, Father filed a motion to terminate or modify his child support obligation. Shortly thereafter, on October 31, 2017, Montgomery County Children Services ("MCCS") filed a motion for legal custody of M.J.M. to be granted to Maternal Aunt. A hearing on both motions was held before a juvenile court magistrate on July 9, 2018. During this hearing, Father testified that he did not oppose MCCS's legal custody motion and had no objection to Maternal Aunt being granted legal custody of M.J.M. Therefore, the main issue to be determined at the hearing concerned whether Father's child support obligation should be terminated or modified.

{¶ 6} In his motion to terminate or modify child support, Father argued that his current monthly child support obligation of $434.50 should be terminated as a result of M.J.M. receiving Social Security benefits and guardianship funds. At the hearing on the

motion, Maternal Aunt testified that M.J.M. receives a Social Security benefit in the amount of $834 per month due to Mother's death. Of that amount, Maternal Aunt testified that $265 is used to pay for storage lockers containing Mother's belongings that were awarded to M.J.M. through the probate court. According to Maternal Aunt, M.J.M. would like to keep those belongings to help furnish her own home in the future. Maternal Aunt also testified that $325 of the Social Security benefits is paid to Maternal Grandfather for M.J.M.'s cell phone bill and fees, and for M.J.M.'s allowance, which is a little over $100 a month.

{¶ 7} In addition to the Social Security benefits, Maternal Aunt testified that Mother's home had been sold and the proceeds of the sale were put into a guardianship for M.J.M. Maternal Grandfather testified that he receives $1,634 in Worker's Compensation benefits for Mother's death twice a month, which he deposits into M.J.M.'s guardianship. Maternal Aunt and Maternal Grandfather both testified that the guardianship money is not available to M.J.M. until she turns 18 years old, unless the probate court approves the release of funds for a specific use. Maternal Grandfather testified that he has petitioned the probate court for funds to purchase a car for M.J.M.

{¶ 8} Father testified that, as of the date of the hearing, he had been employed at USF Holland in West Chester, Ohio, for three weeks. Prior to that, Father testified that he had worked for Ryder Integrated until December 8, 2017. Father testified that his hourly wage was $18.48 with a guaranteed 40 hours of work per week. Based on that information, the magistrate calculated Father's annual salary as $38,438.40. Father testified that he was married with no other minor children. Father also testified that his wife was employed.

{¶ 9} On August 7, 2018, the juvenile court magistrate issued a decision granting legal custody of M.J.M. to Maternal Aunt and denying Father's motion to terminate or modify child support. Ten days later, on August 17, 2018, Father filed objections to the magistrate's decision denying his motion to terminate or modify child support. Father also filed supplemental objections on February 15, 2019. However, on April 19, 2019, the juvenile court issued a judgment overruling Father's objections and adopting the magistrate's decision denying Father's motion to terminate or modify child support. Father now appeals from that judgment, raising a single assignment of error for review.

**Assignment of Error**

{¶ 10} Under his sole assignment of error, Father claims that the trial court erred in denying his motion to terminate or modify his child support obligation. In support of this claim, Father asserts that pursuant to R.C. 3119.22 and R.C. 3119.23, his monthly child support obligation of $434.50 should have been reduced to $0 due to the Social Security benefits received by M.J.M. and the funds that M.J.M. will receive from her guardianship when she turns 18 years old. Father also asserts that his child support arrearage should have been reduced based on Social Security back pay allegedly awarded to M.J.M. We find no merit to either of Father's claims.

{¶ 11} A trial court's ruling on a motion to modify child support is reviewed on appeal for an abuse of discretion. *Burks v. Burks*, 2d Dist. Montgomery No. 28349, 2019-Ohio-4292, ¶ 8, citing *Matlock v. Matlock*, 2d Dist. Montgomery No. 28278, 2019-Ohio-2131, ¶ 12. An abuse of discretion occurs when a trial court's decision is "unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place*

*Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 12} Pursuant to R.C. 3119.22, the trial court "may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet would be unjust or inappropriate and therefore not be in the best interest of the child." Again, we apply an abuse-of-discretion review to a trial court's decision whether to deviate from child support owed under the applicable worksheet. *Burks* at ¶ 9, citing *Hamby v. Hamby*, 2d Dist. Montgomery No. 26506, 2015-Ohio-1042, ¶ 16.

{¶ 13} In this case, Father argues that four of the factors listed under R.C. 3119.23 justify a deviation from the $434.50 support obligation calculated under the child support computation worksheet. Specifically, Father argues that the factors listed in R.C. 3119.23 (F), (P), (K), and (Q) support finding that his child support obligation should have been reduced to $0. Those factors are as follows:

(F) The obligee's income, if the obligee's annual income is equal to or less than one hundred per cent of the federal poverty level;

* * *

(K) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;

* * *

(P) Extraordinary child care costs required for the child or children that exceed the maximum state-wide average cost estimate as described in division (P)(1)(d) of section 3119.05 of the Revised Code, including extraordinary costs associated with caring for a child or children with specialized physical, psychological, or educational needs; [and]

* * *

(Q) Any other relevant factor.

R.C. 3119.23(F),(K),(P) and (Q).

{¶ 14} In discussing the aforementioned factors, Father fails to explain how they apply to the instant case and we likewise fail to see how they are applicable. For example, factor (F) pertains to the obligee's income—the obligee in this case being Maternal Aunt, a non-parent, whose income is not factored into the child support calculation. *See* Child Support Computation Worksheet attached to Magistrate's Decision (Aug. 7, 2018), p. 7. *See also* R.C. 3119.07(C) ("If neither parent of a child who is the subject of a child support order is the residential parent and legal custodian of the child and the child resides with a third party who is the legal custodian of the child, the court shall issue a child support order requiring *each parent* to pay that parent's child support obligation pursuant to the child support order.") (Emphasis added.) Therefore, because Maternal Aunt's income is not part of the child support calculation, factor (F)

simply did not apply here.

{¶ 15} Factor (K), concerning Father and Mother's standard of living, is also inapplicable, as Mother is deceased and there was no evidence of any standard of living concerns raised in the trial court. With regard to factor (P), concerning "extraordinary child care costs," the record indicates that M.J.M. has been receiving trauma counseling since 2016 and also receives treatment from other medical providers for multiple mental and physical conditions. Assuming that the costs for those services are extraordinary costs for purposes of factor (P), we fail to see how that factor supports Father's claim that his child support obligation should be reduced to $0, as those costs would require Father to pay additional child support to Maternal Aunt so that M.J.M. could continue to receive those services.

{¶ 16} As for factor (Q), which instructs the trial court to consider "any other relevant factor," Father provides no relevant factor other than that M.J.M. receives monthly Social Security benefits. Father argues that pursuant to *Williams v. Williams*, 88 Ohio St.3d 441, 727 N.E.2d 895 (2000), his child support obligation should be offset by M.J.M.'s Social Security benefits. Father also argues that pursuant to *Rice v. Rice*, 177 Ohio App.3d 476, 2008-Ohio-3518, 895 N.E.2d 198 (5th Dist.), he is entitled to have his child support arrearage offset by Social Security back pay. However, both *Williams* and *Rice* are distinguishable from the present case.

{¶ 17} Unlike the present case, the obligor fathers in *Williams* and *Rice* became physically disabled and received Social Security benefits as a result of their disabilities. Because the fathers' children in those cases also received derivative Social Security income for the fathers' disabilities, the fathers moved to have their child support

obligations and/or arrearages reduced by the amount of Social Security disability benefits received by their children. The courts in *Williams* and *Rice* found it appropriate to credit the fathers' child support obligations/arrearages with the Social Security disability benefits received by their children. *Williams* at syllabus; *Rice* at ¶ 7-10. *Williams* specifically noted that "where the disabled parent has no other source of income due to his or her disability, the receipt of Social Security payments actually ensures that their child support obligation will be satisfied," and that "Social Security payments are tantamount to earnings by the disabled parent." *Williams* at 444.

{¶ 18} The present case is distinguishable from *Williams* and *Rice* because Father is not the source of the social security benefits being received by M.J.M. Rather, M.J.M. is receiving the social security benefits as a result of Mother's death. Therefore, the benefits are in no way attributable to Father and not tantamount to Father's earnings.

{¶ 19} In *In re Mudrak*, 7th Dist. Belmont No. 94-B-32, 1997 WL 28557 (Jan. 22, 1997), the Seventh District Court of Appeals held that, because the father in that case was not the parent whose disability occasioned the Social Security benefits awarded to his child, the Social Security benefits could not be credited against the father's child support obligation. *Id.* at *5 (holding that "social security derivative payments received on behalf of a minor child as a result of a parent's disability should be credited toward *that parent's* support obligation"). (Emphasis sic.) Like the instant case, the child in *Mudrak* received Social Security benefits as a result of her mother's death and the father attempted to have those benefits credited against his child support obligation. The *Mudrak* court likened such credit as a windfall to the father and stated that:

If, as [father] argues, he is given a dollar for dollar credit, he would pay no

child support and would thus receive a windfall. To illustrate this, consider what the situation would be if this were an ordinary case where [mother] survived and had no income. [Father's] $17,680.00 annual salary would yield an annual child support obligation of $3,425.00 or, taking it one step further, if [mother] had survived and she had annual income equal to the social security benefits currently being received[,] * * * $4,044.00, [father's] annual child support obligation would be $3,321.00 per year. It is inconceivable then that [father] should receive a windfall from the death of the child's mother and pay no support whatsoever. Further, [father] has failed to establish through the record how a dollar for dollar credit for child support benefits received by [the child], against his child support obligation, would serve the best interest of the child. [Father's] argument for a dollar for dollar credit is rejected.

*Id.* at *3.

{¶ 20} Similarly, in *Paton v. Paton*, 91 Ohio St.3d 94, 742 N.E.2d 619 (2001), the Supreme Court of Ohio held that Social Security disability benefits awarded to a child due to *the child's* disability did not constitute a financial resource that justified deviating from the basic child support schedule. *Id.* at syllabus. In so holding, the Supreme Court stressed that "[p]arents, to the extent that they are able, have an obligation to support their minor children*. In situations where a child is eligible to receive [Social Security Income], these benefits are intended to supplement the parents' support obligation, not to reduce it.*" (Emphasis added.) *Id.* at 97.

{¶ 21} Based on the foregoing, we find that M.J.M.'s receipt of monthly Social

Security benefits resulting from Mother's death did not warrant reducing Father's child support obligation or arrearage. Except for referencing M.J.M.'s guardianship funds, which M.J.M. cannot access until she turns 18 years old, Father provided no other basis on which to terminate or reduce his child support obligation. Therefore, because Father otherwise failed to establish that his monthly child support obligation of $434.50 was unjust or inappropriate and not in M.J.M.'s best interest, it was not an abuse of discretion for the trial court to deny Father's motion to terminate or modify his child support obligation.

{¶ 22} Father's sole assignment of error is overruled.

## Conclusion

{¶ 23} Having overruled Father's assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
Robert Alan Brenner
Michael Booher
Christopher Deal
Theodore Valley
Lori Byrd
Hon. Helen Wallace