[Cite as *Wilkes v. Wilkes*, 2022-Ohio-3080.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| MILTON A. WILKES | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29456 |
| | : | |
| v. | : | Trial Court Case No. 2019-DR-247 |
| | : | |
| NIKKI D. WILKES | : | (Appeal from Common Pleas |
| | : | Court – Domestic Relations Division) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of September, 2022.

. . . . . . . . . .

HEATHER DUWEL-MEHL, Atty. Reg. No. 0085938, 130 West Second Street, Suite 2101, Dayton, Ohio 45402
     Attorney for Plaintiff-Appellee

CHERYL R. WASHINGTON, Atty. Reg. No. 0038012, 10 West Second Street, Suite 2225, Dayton, Ohio 45402
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

EPLEY, J.

**{¶ 1}** Appellant, Nikki D. Wilkes, appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which found her in contempt of court for failing to follow a parenting time order. For the reasons that follow, the judgment of the trial court will be affirmed.

## I.      Facts and Procedural History

**{¶ 2}** Nikki and Milton Wilkes were married in Toledo on June 24, 2006, and have two children as a result of their union: a twelve-year-old son and an eight-year-old daughter. After approximately eleven years of marriage, the couple separated and ultimately divorced. Following the divorce, Nikki resided in Toledo where she worked as a nurse, and Milton lived in Miamisburg. A parenting plan was filed with the court, and according to the record, Nikki was named the residential parent, but Milton got the children every other weekend during the school year and every other week in the summer. Holidays were split between the parties. For instance, Nikki was scheduled to have the children for Martin Luther King Jr. Day, Easter, Independence Day, and Halloween on even-numbered years, and Presidents Day, Memorial Day, Labor Day, and Thanksgiving on odd-numbered years. Milton would have the children the opposite holidays.

**{¶ 3}** The controversy in this case revolves around Milton's missed parenting time on Thanksgiving 2020 and Martin Luther King Jr. Day 2021. According to the trial testimony, Milton was scheduled to have parenting time with the children on Thanksgiving 2020. But when he called his son on Tuesday, November 24, two days before the holiday, he learned that Nikki had taken them to a family function in Mississippi and as a result,

he would miss his parenting time on November 26, 27, 28, and 29. When Milton asked Nikki why she took the children without notice, "she stated that she missed Thanksgiving with her family in Mississippi the previous Thanksgiving. So, that's the reason she was taking [Milton's parenting time]." Hearing Tr. at 38.

{¶ 4} As to Martin Luther King Jr. Day 2021, Milton testified that he gave Nikki notice (via emails to three different addresses) that he was coming to pick up the children for the scheduled parenting time, but when he arrived at her Toledo residence after driving from Miamisburg, no one answered the door. He stated that after he waited for a time, he returned home.

{¶ 5} Following the Martin Luther King Jr. Day incident, Milton filed a multi-count motion for contempt and order to show cause. Of importance to this appeal are Counts 1 and 2 which refer to Milton's lack of parenting time during the Thanksgiving and Martin Luther King holidays. After briefing from the parties and an evidentiary hearing, the magistrate found Nikki in contempt for denying Milton his parenting time. The magistrate concluded that "the Decree gives Thanksgiving and the Martin Luther King holiday to Milton. Nikki did not comply with the court's order, and is therefore in contempt." Magistrate's Decision at 3. Nikki filed objections to the magistrate's decision, but on March 30, 2022, the court found the objection not well taken and concluded that Nikki was in contempt. The court reaffirmed the magistrate's proposed sentence of a 30-day suspended jail term, $500 in attorney fees, $200 in court costs, and make-up parenting time.

{¶ 6} Nikki has filed a timely appeal raising one assignment of error.

II.     The contempt finding was against the manifest weight of the evidence

{¶ 7} Nikki argues that "the trial court's decision upholding the magistrate's decision holding [her] in contempt of court was against the manifest weight of the evidence." Appellant's Brief at 7.

{¶ 8} When an appellate court reviews an argument challenging the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A case should not be reversed as being against the manifest weight of the evidence except "'in the exceptional case in which the evidence weighs *heavily* against'" the trial court's judgment. (Emphasis added.) *Id.*

{¶ 9} "Although contempt proceedings are said to be neither civil [n]or criminal, courts often need to classify them as either civil or criminal." *Owais v. Costandinidis*, 2d Dist. Greene No. 2014-CA-5, 2014-Ohio-4103, ¶ 84. If sanctions are designed to benefit the complainant through remedial or coercive means, then the contempt proceeding is civil. *Id.* "Normally, contempt proceedings in domestic relations matters are civil in nature because their purpose is to coerce or encourage future compliance with the court's orders." (Citations omitted.) *Fidler v. Fidler*, 10th Dist. Franklin No. 08AP-284, 2008-Ohio-4688, ¶ 11.

{¶ 10} "A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the terms of the order." *Jenkins v. Jenkins*, 2012-Ohio-4182, 975 N.E.2d 1060, ¶ 12 (2d Dist.), quoting *Wolf v. Wolf*, 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 14. "Clear and convincing evidence is the standard of proof in civil contempt proceedings." *Id.*, quoting *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP1176, 2011-Ohio-5972, ¶ 13. It is the level of proof which would "cause a trier of fact to develop a firm belief or conviction as to the facts sought to be proven." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus; *Haviza v. Haviza*, 2d Dist. Darke No. 2017-CA-1, 2017-Ohio-5615, ¶16. Once a violation is established, the defendant bears the burden to prove an inability to comply, and absent that proof, a contempt finding is appropriate. *Burks v. Burks*, 2d Dist. Montgomery No. 28349, 2019-Ohio-4292, ¶ 22.

{¶ 11} A trial court's decision to find a party in contempt is reviewed for an abuse of discretion. *Id.* To constitute an abuse of discretion, a trial court's action must be arbitrary, unreasonable, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232, 466 N.E.2d 875 (1984). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *State v. Malloy*, 2d Dist. Clark No. 2011-CA-21, 2012-Ohio-2664, ¶ 24. A court's decision is unreasonable "if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process persuasive." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment, Corp.*,

50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 12} According to the order of parenting time, Milton was entitled to have the children with him for the 2020 Thanksgiving holiday and 2021 Martin Luther King holiday weekend. That did not happen here because Nikki took the children to Mississippi to celebrate Thanksgiving with her family, and then when Milton arrived to pick up the children on Martin Luther King Jr. Day, no one came to the door.

{¶ 13} Nikki argued at the hearing that she and Milton had an agreement that she would have the children for Thanksgiving in 2020 because she missed her family Thanksgiving in 2019 due to Milton's unexpected surgery, but there is no written agreement for this in the record and Milton strongly denied making any sort of verbal agreement. Nikki also posited at the hearing that Milton did not have parenting time on Martin Luther King Jr. Day 2021 because it was a make-up date from the previous year. Nevertheless, during cross-examination, she agreed that there was no written agreement that she should have the children on Thanksgiving 2020 and that it should have been Milton's parenting time. Hearing Tr. at 86. She also admitted that she did not send the children with their father on Martin Luther King Jr. Day 2021 and that there was no written agreement that she should have them as a make-up date. Hearing Tr. at 91-92.

{¶ 14} The trial court did not lose its way when it determined that Nikki was in contempt. Milton proved both the existence of a court order and Nikki's noncompliance with the terms of it. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against the contempt finding or that a manifest miscarriage of justice has occurred. Nikki's assignment of error is overruled.

### III.      Conclusion

**{¶ 15}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and LEWIS, J., concur.

Copies sent to:

Heather Duwel-Mehl
Cheryl R. Washington
Hon. Timothy Wood