[Cite as *Lawler v. Green*, 2024-Ohio-2046.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

MICHAEL LAWLER,                           :

    Plaintiff-Appellant,                 :    CASE NO. 23CA10

    v.                                       :

BROOKLYN GREEN,                           :    DECISION AND JUDGMENT ENTRY

    Defendant-Appellee.                  :

_____

APPEARANCES:

Evan N. Wagner, Dublin, Ohio, for Appellant.

Brooklyn Green, pro se[1].

Thelma C. Fosselman, Attorney for Pickaway County Job and Family Services, Division of Child Support, Circleville, Ohio, for Appellee.

_____

CIVIL CASE FROM COMMON PLEAS COURT, JUVENILE DIVISION
DATE JOURNALIZED:5-22-24
ABELE, J.

{¶1} This is an appeal from a Pickaway County Common Pleas Court, Juvenile Division, judgment that found Michael Lawler, plaintiff below and appellant herein, in contempt of court for the failure to pay child support.

{¶2} Appellant assigns one error for review.

"THE TRIAL COURT ABUSED ITS DISCRETION BY

_____

[1] Appellee did not file a brief and did not participate in this appeal.

> FINDING APPELLANT IN CONTEMPT OF COURT FOR
> FAILING TO PAY CHILD SUPPORT BECAUSE
> APPELLANT PRESENTED COMPETENT, CREDIBLE
> EVIDENCE AND/OR LEGALLY SUFFICIENT EVIDENCE
> ESTABLISHING APPELLANT'S INABILITY TO PAY."

{¶3} Appellant, biological father of minor K.B., and mother Brooklyn Green, appellee, entered into a shared parenting agreement on June 7, 2018, that established, inter alia, appellant's obligation to pay $238.64 per month child support.

{¶4} On September 19, 2022, the Pickaway County Child Support Enforcement Agency (PCCSEA) filed an Administrative Adjustment Recommendation that (1) required appellant, obligor, to pay $449.98 child support per month, (2) presumed appellee, obligee, to be the appropriate parent to provide health insurance coverage for the child, and (3) required that when health insurance coverage becomes available to obligor at a reasonable cost, the obligor shall inform the agency and may seek a modification of the health care recommendation.

After ancillary proceedings on other issues, the matter came on for a hearing before a magistrate on appellant's objections to the Administrative Adjustment Recommendation. After the hearing, the magistrate found that because appellant failed to establish his service-related Veterans Administration (VA) benefits are "means-tested," the child support calculation

should include the total amount of the veteran's benefits. The

controlling statute is R.C. 3119.01(C)(12):

> Gross income" means, except as excluded in division
> (C)(1) of this section, the total of all earned and
> unearned income from all sources during a calendar year,
> whether or not the income is taxable, and includes income
> from * * * benefits that are not means-tested and that
> are received by and in the possession of the veteran who
> is the beneficiary for any service-connected disability
> under a program or law administered by the United States
> department of veterans' affairs or veterans'
> administration;

Further, the statute excludes the following from gross income:

> "Gross income" does not include any of the following:
> (a) Benefits received from means-tested government
> administered programs, including Ohio works first;
> prevention, retention, and contingency; means-tested
> veterans' benefits;
>
> (b) Benefits for any service-connected disability under
> a program or law administered by the United States
> department of veterans' affairs or veterans'
> administration that are not means-tested, that have not
> been distributed to the veteran who is the beneficiary
> of the benefits, and that are in the possession of the
> United States department of veterans affairs or
> veterans' administration;

{¶5} The magistrate stated that the threshold issue

revolves around characterizing plaintiff's VA disability

benefits. As a general rule, non-means-tested benefits are

included in gross income to calculate child support, but the

statute excludes non-means-tested benefits that have *not yet*

*been distributed* to a veteran and that are in the VA's

possession. The magistrate cited a Second District case that held that the magistrate had erred when excluding VA disability benefits from the obligor's gross income because the evidence in that record did not show that met it the exclusion requirements. *Mossing-Landers v. Landers,* 2016-Ohio-7625, 70 N.E.3d 1060 (2d Dist.). In the case at bar, the magistrate found that in light of *Landers*, appellant failed to establish that his service-related disability benefits are "means-tested" or meet the exclusion in R.C. 3119.01(C)(12)(b). Thus, the magistrate included the total amount of appellant's service-related disability benefits in its calculation.

{¶6} After determining that the agency did not err in its calculation, the magistrate examined the obligee's offer for a support deviation. The magistrate noted that the statutory guideline in this case would be $422.38 per month for current child support and $18.78 per month for current cash medical support, for a total of $449.98 per month. The magistrate noted a significant increase from the original order of $238.64 per month, and further noted that the order "was effective 4/13/18, however, Obligor has not paid anything on this order since inception. An arrears repayment order was added to this figure. Arrears are now nearly $10,000."

{¶7} Consequently, the magistrate found that a deviation is in the child's best interests based on the obligee's knowing and voluntary request and the court's modification of the income tax dependency benefit. Thus, the magistrate recommended that (1) the obligee be entitled to claim the minor child as a dependent for income tax purposes every year commencing in 2023, and "a deviation to $200 per month, plus processing fees, cash medical support and arrears repayment, would be warranted." Consequently, the magistrate recommended (1) the effective date of these orders be October 1, 2022, (2) obligor shall pay $200, plus processing charge, per month, for current child support, and $18.78, plus processing charge, per month, for cash medical support, for a total of $223.16 per month, (3) obligor shall repay arrears for current child support at a rate of $20 per month, plus processing fees, and for cash medical support at the rate of $1.88 per month, plus processing fees.

{¶8} Subsequently, PCCSEA asked the trial court to find appellant in contempt for his failure to comply with the court's April 13, 2018 child support order. In addition, appellant objected to the magistrate's January 4, 2023 recommendation. The trial court's March 13, 2023 hearing addressed both the appellant's objections and PCCSEA's contempt motion.

{¶9} At the hearing, Pickaway County Juvenile and Family Services and Child Support Division Case Manager Cleresa Brust testified that she reviewed appellant's payment history for the past 12 months and brought a copy of the pay record from the beginning of the child support order. Brust indicated that the current monthly obligation totaled $286.37 and appellant's "past due unpaid balance is $10,610.53 * * * through February 28, 2023." Appellant made "zero payments in the past 12 months," made his last payment on February 25, 2022, and only made five payments in the life of the order. Brust also noted that appellant's veteran's benefit would soon increase to $3857.34.

{¶10} Appellant testified that he has two children, including the child who is the subject of the child support order. Appellant's monthly obligation in the present case is $286.37. Appellant also owes $420 per month in child support in Fairfield County. Although appellant acknowledged that child support orders have been in place for K.G. since 2018, he only made five payments even though he is aware that he is required to make child support payments. Appellant stated, however, that he is unable to do so because of his disability. Appellant further testified, "I was 50% disabled back in 2012 * * * a mixture of PTSD, my lower back, ankle, and tinnitus." "[T]hen in 2020, upon leaving the treatment center, they had increased

PICKAWAY, 23CA10

my disability * * * to 70% * * * [w]ith the Unemployability,

taking it up to 100%."  Appellant explained that he is a "100%

disabled veteran with the VA, Individual Unemployability and

posttraumatic stress disorder."  Appellant receives "a little

over thirty-five hundred" in monthly veteran's benefits but

stated that he is "very strapped for funds."

{¶11} When asked if he understood that current law requires

him to pay child support from his veteran's benefits, appellant

disagreed and testified:

> [I]n 2018 my life fell apart, I went from having my son,
> two girls that I considered my own, a daughter on the
> way, and someone that I thought I was going to marry to
> my life going into shambles.  Uh, I lost my job, lost my
> house, lost a couple cars, finances completely ruined,
> um, talked with [the minor child's] Mom and we discussed,
> my Dad had offered me a chance to get down to Florida,
> try to get away, reset.  Uh, he had some friends that he
> suggested I could try to do some work with, which didn't
> pan out.  Uh, that was in 2018.  Uh, my drinking got out
> of hand, spiraled out of control, and that was in 2019
> is when it got really bad.  Uh, October,
> September/October of 2019, the VA had ran some tests and
> mentioned I was encroaching with a fatty liver, and had
> really encouraged me to quit drinking.  Um, at the time
> I was 29 years old, so like, I didn't really take it
> seriously for a few months and then; I did, I was going
> to more VA appointments, but I didn't quit drinking until
> January 4, 2020, and I have not had a drink since that
> day.  So, a little over 1160 days, 1165.  A little over
> three years. Um, since then, the VA has been working
> with me quite a bit.  A lot of physical therapy.  A lot
> of other things have happened to me that they're trying
> to work on getting me back together, kind of piecing me
> back together.  It was during that three month stay at
> the inpatient rehab that they decided that I was
> disabled.  But, but more so than what I already was.

**{¶12}** The prosecutor added that appellant's benefit is also calculated based on "the fact that he has two kids and should be providing a portion of his benefit for them," and suggested that appellant could get a minor job to earn $300 to pay his monthly support if he genuinely does not have the income to pay his bills and his child support.  Appellant, however, stated that he is unable to work at all.  When asked where his $3500 per month benefit "is going," appellant testified that his two children are with him part-time.  In addition, he pays $1050 for rent, $458 for a Ford Fiesta, $326 for car insurance, $362 for water, sewer and trash, $286 for phone, $90 every six weeks for his daughter K.G. for gymnastics, $420 for Fairfield County child support, $400-$500 for gas, plus food, and his credit card is "maxed out."

**{¶13}** Appellant further stated that he travels to Florida to help his grandmother, uses her address, receives therapy through the Bay Pines VA system in Florida, possesses a Florida driver's license, and registers his car in Florida.  Appellant acknowledged that he purchased a $1000 boat, but the marina has since sold and appellant is no longer permitted to dock his boat there, "but my boat is broken down and I have no way to get it out of there."  The second part of the hearing dealt with

whether appellant's VA benefits should be excluded from appellant's gross income for child support calculation.

{¶14} The trial court issued its decision on April 7, 2023, adopted the magistrate's decision, and found that appellant received a $3,548 monthly Individual Unemployability (IU) VA benefit. The court acknowledged that appellant argued that his benefit should not be included as income to establish a child support order because, if he earns more than a certain amount of income ($14,094) per year, the VA will terminate his IU benefit. The court, however, found appellant's position flawed:

> He is granted the IU benefit *because* of his inability to work based upon a disability. If he were awarded the IU benefit because he was not able to earn more than the poverty level income (in this case, $14,094 per year for a household for one person under the age of 65), *then* the IU benefit would be "means tested" and not includable income. The reason that the VA monitors the recipient's income is that if the recipient is earning more than poverty level income, then the VA would conclude that the recipient was, in fact, able to obtain and maintain employment DESPITE his disability. The recipient would still receive his allocation for the percentage of his disability (70%); however, he would not receive the additional IU benefits, which result in his benefit being increased to the level of payment associated with 100% disability.

{¶15} The court further quoted a January 4, 2023 letter from Assistant Director Pickaway County Veteran's Services Todd Huffman that provides "a cogent explanation of IU benefits":

> IU is a benefit that is awarded to veterans that are

> unable to work due to service-connected disabilities that don't meet the 100% disqualification *but can be paid at a 100% rating.* To be eligible *you must be unable to hold a job as a result of service-connected disabilities.* This means maintaining substantially gainful employment. * * * *Therefore, it is based off a disability, not off income and is not a means tested benefit.* Benefits based on income would be considered service-connected pension, which is means tested and based off income.

{¶16} Therefore, the trial court ordered: (1) the effective date of the order be October 1, 2022, (2) obligor pay $200, plus processing charge, per month for current child support, and $4, plus processing charge, per month for cash medical support, for a total of $204, processing charge included, per month, (3) obligor pay arrears for current support at a rate of $40 per month, plus processing fees, and for cash medical support, if any, at the rate of $5 per month, plus processing fees.

{¶17} Regarding the contempt motion, the trial court found that from March 1, 2022 through February 28, 2023, appellant paid zero toward his child support obligation. The court noted that, although appellant argued that he did not have sufficient income to pay both his bills and child support and that he provided a lengthy description of his bills, appellant "failed to provide a justifiable defense to not paying his child support order. Obligor has discretionary income that would be sufficient to pay his support. Child support takes precedence

over credit card bills." Thus, the court found appellant in contempt, sentenced him to serve 10 days in jail, and stayed the sentence on the condition of future compliance with court orders. The court indicated that conditions to purge include: (1) obligor shall notify CSEA within 72 hours of any change in employment or address, and (2) obligor shall make voluntary payments on the child support obligation.

{¶18} This appeal of the contempt order followed.


I.

{¶19} In his sole assignment of error, appellant asserts that the trial court abused its discretion when it found him in contempt for his failure to comply with the child support order. Appellant believes he presented competent, credible evidence regarding his inability to pay child support. In particular, appellant contends that his VA benefits are insufficient to permit him to pay his child support obligation, and he will lose his benefits if he seeks employment.

{¶20} A court order for child support necessarily involves a court finding that the obligor can pay. The burden is on the obligor by allegations and proof to establish his or her inability to pay. *Carroll v. Detty,* 113 Ohio App.3d 708, 681 N.E.2d 1383 (4th Dist.1996), citing *State ex rel. Cook v. Cook,*

66 Ohio St. 566, 64 N.E. 567 (1902). If a party makes a good faith effort to pay support, contempt is unjustified. *Raleigh v. Hardy*, 5th Dist. No. 08CA1040, 2009-Ohio-4829, ¶ 47, citing *Courtney v. Courtney,* 16 Ohio App.3d 329, 475 N.E.2d 1284 (3d Dist.1984). The burden to show an inability to pay is on the party being held in contempt. *Id.* citing *Farrell v. Farrell,* 5th Dist. No. 2008-CA-0080, 2009-Ohio-1341, ¶ 15.

{¶21} Because a child support obligation does not fall within the meaning of "debt," as defined in Section 15, Article I of the Ohio Constitution, an order to pay support may be enforced through contempt proceedings. R.C. 2705.031 authorizes a party with a legal claim to child support to initiate a contempt action against the obligor for failure to pay child support. "Contempt of court" is defined as the disobedience or disregard of a court order or a command of judicial authority. *State ex rel. Corn v. Russo,* 90 Ohio St.3d 551, 554, 740 N.E.2d 265 (2001); *Montgomery v. Montgomery,* 4th Dist. Scioto No. 03CA2923, 03CA2925, 2004-Ohio-6926, ¶ 11; R.C. 2705.02(A). Contempt encompasses conduct that engenders disrespect for the administration of justice or which tends to embarrass, impede or disturb a court in performing its function. *Denovchek v. Trumbull Cty. Bd. of Commrs.,* 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988). Civil contempt exists when a party fails to do

something the court orders to benefit an opposing party. *Montgomery, supra.* Usually, contempt proceedings in domestic relations cases are indirect and civil in nature because they aim to coerce or encourage future compliance with the court's orders and concern centers on behavior outside the court's presence. *Flowers v. Flowers,* 10th Dist. Franklin No. 10AP-1176, 2011-Ohio-5972. The failure to pay child support is typically punished by civil contempt, *Dressler v. Dressler*, 12th Dist. Warren Nos. CA2002-08-085 & CA2002-11-128, 2003-Ohio-5115, ¶ 14, as is interference with visitation, *Mascorro v. Mascorro*, 2d Dist. Montgomery No. 17945, 2000 WL 731751 (Jun.9, 2000).

**{¶22}** "A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the terms of the order." *Jenkins v. Jenkins*, 2012-Ohio-4182, 975 N.E.2d 1060, ¶ 12 (2d Dist.), quoting *Wolf v. Wolf,* 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 13. Clear and convincing evidence must support a civil contempt finding. *See Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (1980). Clear and convincing evidence is the level of proof that would "cause a trier of fact to develop a firm belief or conviction as to the facts sought to be proven." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Once a

plaintiff establishes a violation, the defendant bears the burden to prove an inability to comply, and absent that proof, a contempt finding is appropriate. *Burks v. Burks*, 2d Dist. Montgomery No. 28349, 2019-Ohio-4292, ¶ 22.

{¶23} Generally, a trial court possesses broad discretion when it considers a contempt motion. *Burchett v. Burchett,* 4th Dist. Scioto No. 16CA3784, 2017-Ohio-8124, ¶ 19, *Jones v. Jones,* 4th Dist. Highland No. 20CA3, 2021-Ohio-1498, ¶ 28; *State ex rel. Cincinnati Enquirer v. Hunter,* 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 29. Thus, absent an abuse of discretion, an appellate court will ordinarily uphold a trial court's contempt decision. *E.g., Burchett* at ¶ 19; *Welch v. Muir*, 4th Dist. Washington No. 08CA32, 2009-Ohio-3575, ¶ 10. An abuse of discretion is "'an unreasonable, arbitrary or unconscionable use of discretion * * *.'" *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23. An appellate court may not find an abuse of discretion simply by substituting its judgment for that of the trial court. *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 732, 654 N.E.2d 1254 (1995); *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991). Instead, to find an abuse of discretion, "the result must be so palpably and

grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996); *Bragg v. Hatfield*, 4th Dist. No. 02CA567, 2003-Ohio-1441, ¶ 24; *McDonald v. McDonald*, 4th Dist. Highland No. 12CA1, 2013-Ohio-470, ¶ 14.

**{¶24}** In the case sub judice, after our review we conclude that the trial court did not abuse its discretion when it found appellant in contempt for his failure to pay child support. Although we recognize that living expenses have greatly increased especially during the past few years, we believe that appellant did not demonstrate that he made a good faith effort to pay his child support or that he could not pay. During the contempt proceedings, appellant argued that the court should not include his VA benefits as income for calculating child support and that he cannot pay child support based on his unemployment. However, the PCCSEA adduced evidence that appellant receives a $ 3548 veteran's monthly benefit. The trial court's April 7, 2023 entry stated:

> [Appellant] testified that he has not paid child support order as ordered. He stated that he does not have sufficient income to pay his bills and to pay child

support.   Obligor gave a lengthy description of his bills.   The court finds that he failed to provide a justifiable defense to not paying his child support order.   Obligor has discretionary income that would be sufficient to pay his support.   Child support takes precedence over credit card bills.

Our review of the record also reveals that appellant did present testimony and evidence concerning his monthly expenses. However, as appellee points out, although appellant testified that he is "strapped," he also testified he travels frequently to his grandmother's home in Florida and that he purchased a boat despite knowing that he owed child support.

{¶25} Appellee further points out that in April 2018, appellant knowingly and willingly entered into an agreement to pay child support.  However, he did not make a payment until December 26, 2019.  Appellee also points to *Rose v. Rose*, 481 U.S. 619, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987), for the proposition that Congress intended veterans disability benefits to be used partly for the support of the veteran's family. Thus, although the inability to pay may be a valid defense to a contempt finding, appellant failed to present any evidence of efforts to mitigate his expenses.

{¶26} Our review of the hearing transcript reveals that the trial court allowed appellant, pro se at the hearing, an opportunity to present any testimony and evidence that he

desired to present.  In addition, the court overlooked appellant's failure to follow rules of procedure and to file a transcript of the magistrate's hearing.  Once again, after our review, we believe that the trial court did not abuse its discretion when it found appellant in contempt for failing to pay child support.  As the United States Supreme Court acknowledged in *Rose,* "[w]e fully appreciate the physical sacrifice appellant made while in the military service of his country, and we acknowledge his needs as a totally disabled veteran for medical assistance and financial support."  *Id.* at 636.  However, appellant's financial obligations to his child demand priority over discretionary spending.[2]

**{¶27}** Consequently, for all of the foregoing reasons, we overrule appellant's assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

---

    [2] Although we recognize that appellant may be displeased with our decision, we nevertheless wish to thank appellant for his military service and to encourage his continued efforts to get his life in order.  We understand that appellant has had great difficulty in his attempt to deal with PTSD and other issues, but we nevertheless recognize that appellant has exhibited the ability to move forward for his own benefit and for the benefit of his children.  We sincerely hope that appellant continues to see progress in his life.

PICKAWAY, 23CA10

JUDGMENT ENTRY

It is ordered that the judgment be affirmed.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.