[Cite as *In re A.M.*, 2021-Ohio-3691.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| IN RE: A.M. | : | Appellate Case No. 29042 |
|  | : | Trial Court Case No. 2013-2824 |
|  | : | (Juvenile Appeal from Common Pleas Court) |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of October, 2021.

. . . . . . . . . . .

JULIA C. KOLBER, Atty. Reg. No. 0078855, 77 West Elmwood Drive, Suite 304, Dayton, Ohio 45459
 Attorney for Plaintiff-Appellee

SARA MOORE, 7280 Mountain Trail, Centerville, Ohio 45459
 Defendant-Appellant, Pro Se

. . . . . . . . . . . . .

HALL, J.

{¶ 1} S.M. ("Mother") appeals pro se from the trial court's judgment entry overruling her objections to a magistrate's decision in favor of appellee D.M. ("Father") on competing motions to modify parenting time with their minor child and for findings of contempt.

{¶ 2} Mother advances six assignments of error. First, she contends the trial court erred in refusing to allow or consider evidence of a history of domestic violence by Father. Second, she claims the trial court erred in relying on guardian ad litem testimony that failed to consider the best-interest factors in R.C. 3109.04 and did not meet the requirements of Sup.R. 48. Third, she asserts that the trial court erred in making her legally responsible for Father's actions in relation to musical-performance contracts she executes on behalf of their child. Fourth, she argues that the trial court erred in making inconsistent rulings and violating the doctrine of stare decisis. Fifth, she maintains that the trial court erred in finding her in contempt while not finding Father in contempt regarding alleged parenting-time violations. Sixth, she contends the trial court erred in giving Father final decision-making rights with regard to their child's activities.[1]

{¶ 3} The record reflects that Mother and Father are the parents of A.M., who was born in March 2012. A.M. is a special-needs child who was born legally blind. He reads braille and walks with a cane. A.M. possesses extraordinary musical talents. He is a piano prodigy who has performed on nationally-recognized television programs and has made numerous other public appearances. Prior to the child's first birthday, Father moved to establish parental rights and sought parenting time. The parties subsequently resolved

---

[1] The sixth assignment of error is identified in Mother's statement of the assignments of error on page one of her opening brief. The sixth assignment of error is not separately addressed elsewhere in the brief.

all custody and parenting-time issues through an "Agreed Order of Parental Rights and Responsibilities." The trial court accepted the agreement and journalized it on June 18, 2014. As relevant here, the agreement designated Mother as A.M.'s residential parent and legal custodian, while designating Father as the child's non-residential parent and awarding him standard parenting time. With regard to "other parenting time," the parties agreed to attempt to accommodate reasonable requests from one another. The agreement provided for make-up parenting time if an emergency prevented scheduled parenting time. The agreement also precluded both parents from interfering with reasonable telephone or other communication with the child. Finally, under the heading "Welfare of the Child," the agreement provided: "The parties recognize that the welfare and happiness of their child is of paramount importance and that their respective rights relating to their child and the companionship of the child shall be exercised in such a manner as to promote the welfare of the child with due regard to the equal rights and interests of the other parent and the child."

{¶ 4} The parties subsequently filed assorted motions, including a motion by Father seeking legal custody and a motion by Mother to amend or suspend Father's parenting time. Once again, the parties resolved their differences through an agreed order, which the trial court approved and filed on March 1, 2016. The agreement provided for Mother to remain the residential parent and legal custodian with Father remaining the non-residential parent and having standard parenting time. The agreement again provided for make-up parenting time in the event of an emergency, and it required each parent to allow reasonable telephone or other communication with the child. With regard to the "Welfare of the Child" provision, the agreement added the following language: "Both

parents will share the decision making rights, the responsibilities and the authority relating to the health, education and welfare of the child."

{¶ 5} Thereafter, on April 17, 2018, Father again moved for legal custody or, alternatively, for modification of parenting time. In support, he argued that Mother had been granting him parenting time beyond what the standard order required but that she recently had stopped doing so. He also argued that legal custody or expanded parenting time would help him assure that A.M.'s special medical needs were being met. On May 22, 2018, Mother filed her own motion to modify parenting time. She also sought to clarify decision-making language in the March 1, 2016 agreed order, to limit Father's "interference" in the child's schooling and musical performances, and to prohibit the parties from engaging in any corporal punishment.

{¶ 6} On July 10, 2018, Mother filed another motion raising modification of parenting time. She sought to suspend or restrict Father's parenting time based on allegations that Father had struck A.M. in the face or head, pulled the child's hair, and punished the child for wanting to call her. Mother also sought to hold Father in contempt for interfering with her telephone contact with the child. In response to Mother's allegations, the trial court filed an interim order requiring Father's parenting time to be supervised by his girlfriend. On August 24, 2018, Mother filed another motion regarding parenting time. She sought an order suspending Father's parenting time based on an allegation that he had struck A.M. in the shoulder. The trial court filed another interim order that included greater supervision of Father's parenting time.

{¶ 7} On January 17, 2019, Father moved to modify the temporary order that limited his parenting time and required it to be supervised. Father alleged that A.M. had

recanted claims about Father striking him. Father also asserted that the guardian ad litem had completed an investigation and had recommended expanding Father's parenting time even beyond the standard order. On April 25, 2019, Father filed a contempt motion against Mother, alleging interference with his parenting time. On May 14, 2019, he filed another contempt motion. On June 7, 2019, Mother filed another motion to modify Father's parenting time. Specifically, she sought to limit Father's involvement in A.M.'s musical performances and to have flexibility to schedule performances during Father's parenting time provided that he received make-up time.

{¶ 8} The parties' competing parenting-time motions, contempt motions, and other motions were tried before a magistrate on March 11, June 14, June 18, and July 2, 2019. The transcripts of those proceedings exceed 1,100 pages. On July 18, 2019, the magistrate filed a decision resolving all pending issues. The magistrate overruled Father's motion for a change of custody, finding no change in circumstances to justify awarding Father legal custody. The magistrate sustained Father's motion for parenting time in excess of the standard order and provided a schedule and guidelines to follow. With regard to the child's musical performances, the magistrate ordered that the parent whose parenting time is impacted by such performances must agree to them being scheduled. The magistrate further ordered that whichever parent is exercising parenting time during a scheduled performance is responsible for transporting the child to the performance and is "in charge" of the child at the performance unless both parties agree otherwise. With regard to contempt issues, the magistrate overruled multiple contempt motions filed by both parties. The magistrate did sustain two of Father's contempt motions, however, based on Mother unilaterally scheduling musical performances for A.M. and taking the

child to those performances during Father's parenting time.

{¶ 9} Mother filed objections and, after obtaining transcripts, supplemental objections to the magistrate's decision. Based on its independent review of the record, the trial court overruled Mother's objections. As relevant here, the trial court's January 25, 2021 ruling sustained Father's motion for modification of his parenting time. The trial court granted him increased parenting time beyond the standard order as detailed in its ruling. The trial court also sustained Father's two contempt motions involving Mother's scheduling musical performances for A.M. during Father's parenting time without his consent. The trial court found Mother in civil contempt and imposed purge conditions that required her to follow parenting-time orders for 12 months. This pro se appeal by Mother followed.

{¶ 10} In her first assignment of error, Mother claims the trial court erroneously refused to consider Father's history of domestic violence against her. In light of this history, Mother contends the trial court should not have continued a "shared-parenting" order. Mother also argues that the trial court should have taken domestic violence against her into account when resolving issues related to Father's use of corporal punishment on A.M., Father's request for increased parenting time, and Father's ability to transport A.M. and to be responsible for the child when musical performances occur during Father's parenting time.

{¶ 11} Upon review, we find Mother's arguments to be unpersuasive. Mother cites incidents that occurred around 2012 or 2013, which was *prior to* the parties original June 2014 agreed order referenced above. (Appellant's brief at 7-8.) Domestic violence charges against Father were reduced to disorderly conduct, and they resulted in a two-

year no-contact order. Mother acknowledges that the no-contact order against Father expired in April 2015, which was *prior to* the parties' most recent March 1, 2016 agreed order. In our view, the trial court did not abuse its discretion in refusing to consider domestic-violence issues between Mother and Father that were fully resolved prior to the parties' most recent agreed order regarding A.M., which was the focus of the hearing before the magistrate.

{¶ 12} We also disagree with Mother's assertion that the trial court improperly "continued" a shared-parenting order despite Father's history of domestic violence. This argument lacks merit for at least two reasons. First, as we noted, the domestic violence issues predated the parties' own agreed orders. If Mother thought the terms of those orders were inappropriate in light of Father's prior behavior, she should not have agreed to them. Second, the March 1, 2016 agreed order was not a shared-parenting order. When allocating parental rights and responsibilities, a trial court may either (1) allocate rights "primarily to one of the parents [and] designate that parent as the residential parent and the legal custodian of the child" or (2) under appropriate circumstances, allocate rights "to both parents and issue a shared parenting order requiring the parents to share all or some of the aspects of the physical and legal care of the children in accordance with the approved plan for shared parenting." R.C. 3109.04(A)(1) and (2). Here, the June 18, 2014 and March 1, 2016 agreed orders both explicitly designated Mother the residential parent and legal custodian of A.M. while designating Father the non-residential parent and awarding him parenting time.

{¶ 13} Finally, we note that the modifications the trial court made in the January 21, 2021 ruling on appeal did not create shared parenting. As noted above, the trial court

increased Father's parenting time beyond what the standard order allowed. It also permitted Father to transport A.M. and to be responsible for the child when musical performances occur during Father's parenting time. We are unconvinced that granting Father more parenting time and allowing him to supervise the child during his parenting time created a shared-parenting situation.

{¶ 14} In opposition to our conclusions, Mother cites the language in the March 1, 2016 agreed order that allowed both parties to "share the decision making rights, the responsibilities and the authority relating to the health, education and welfare of the child." Mother also cites *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 547, for the proposition that a shared-parenting order can include a designation of one parent as the residential parent and legal custodian. Despite Mother's arguments, we remain unconvinced that the trial court ordered shared parenting.

{¶ 15} As noted above, a trial court may allocate parental rights primarily to one parent by designating that parent the residential parent and legal custodian of a child, or it may enter a shared-parenting order. Here the trial court previously approved agreed orders that explicitly designated Mother the residential parent and legal custodian while identifying Father as the non-residential parent. Although the parties' agreed-upon language about decision-making perhaps suggests shared parenting, Mother remains the sole legal custodian. We note too that a shared-parenting order must be preceded by a pleading or motion by one or both parties for shared parenting and the submission of a proposed shared-parenting plan. R.C. 3109.04(A)(2). Mother has not identified any shared-parenting pleading or motion. Nor do the parties' two agreed orders purport to include shared-parenting plans. Whatever ambiguity or confusion the parties' own

language about sharing decision making might create, we are unpersuaded that the agreed order constituted a shared-parenting decree.

{¶ 16} As for Mother's reliance on *Fisher*, we find it distinguishable. In *Fisher*, there was a shared-parenting plan and a decree that designated both parents as residential parents and legal custodians. Both parents later moved for sole residential and legal custody. The trial court designated the mother as the residential parent and legal custodian, and the father appealed. On review, the Third District Court of Appeals treated the trial court's action as the "modification" of a shared-parenting decree, not the termination of shared parenting. The issue before the Third District was whether modifying a shared-parenting arrangement by changing the designation of residential parent and legal custodian required a change of circumstances. The Third District found no need for a change of circumstances. The Ohio Supreme Court disagreed and reversed.

{¶ 17} Notably, however, the Ohio Supreme Court did not decide in *Fisher* whether the trial court's act of changing legal custody from both parents to mother actually constituted *modification* rather than *termination* of shared parenting. Neither party raised that issue on appeal. Instead, the parties presumed that the trial court had modified shared parenting, and the only issue before the Ohio Supreme Court was "whether a modification of joint residential and legal custody requires a change-in-circumstances finding." *Bruns v. Green*, 163 Ohio St. 3d 43, 2020-Ohio-4787, 168 N.E.3d 396, ¶ 20.

{¶ 18} Unlike in *Fisher*, the record here establishes that there never was a shared-parenting decree or a plan for shared parenting. *See, e.g., Bruns* at ¶ 28 (Kennedy, J., concurring) ("Designating one parent as the residential and legal custodian of the child

* * * is statutorily incompatible with shared parenting."). For the reasons set forth above, we conclude that both prior agreed orders designated Mother as the only residential parent and legal custodian and, therefore, did not create shared parenting. Nor did the trial court create shared parenting in the ruling on appeal by increasing Father's parenting time and recognizing his authority over A.M. during his parenting time. That being so, the trial court could not have erred by continuing "shared parenting" without taking into account domestic violence against Mother.[2] The first assignment of error is overruled.

{¶ 19} In her second assignment of error, Mother claims the trial court erred in relying on guardian ad litem testimony that failed to consider the best-interest factors in R.C. 3109.04 and did not meet the requirements of Sup.R. 48 obligating a guardian ad litem to conduct any necessary investigation. She also contends the trial court erred in considering the guardian ad litem's testimony where no report from the guardian ad litem was admitted into evidence.

{¶ 20} Upon review, we find Mother's arguments to be unpersuasive. With regard to the guardian ad litem's report, Mother failed to object below to the report's not being admitted as an exhibit at the hearing. In fact, Mother's objection to the magistrate's decision was the opposite. In her seventh objection, she faulted the magistrate for *admitting* the guardian ad litem's report into evidence. (May 11, 2020 supplemental objections at 25.) Mother now argues that the trial court erred in considering the guardian ad litem's testimony where an accompanying report *was not* admitted.

---

[2] In any event, we note again that the issues involving domestic violence preceded both agreed orders. Therefore, even if the 2014 and 2016 agreed orders did create shared parenting, Mother cannot reasonably complain about a parenting arrangement to which she consented after the claimed objectionable behavior by Father.

**{¶ 21}** Although the most recent guardian ad litem's report in fact was not admitted as an exhibit at the hearing, it was filed with the trial court on June 11, 2019, just three days before the June 14, 2019 hearing date. Moreover, Mother herself called the guardian ad litem as a witness and questioned him about the report, which is part of the record before us. (Tr. Vol. II at 538, 548.) In fact, of the 67 transcript pages of testimony from the guardian ad litem, roughly 54 of them involve direct examination and re-direct examination by Mother's counsel. Although we find nothing deficient about the guardian ad litem's investigation, we note too that Sup.R. 48 is an administrative directive that lacks the force of law and creates no individual substantive or procedural rights. *Echols v. Echols*, 2d Dist. Clark No. 2020-CA-45, 2021-Ohio-969, ¶ 47. For the foregoing reasons, we find no merit in Mother's argument that the trial court erred in considering the guardian ad litem's testimony.

**{¶ 22}** As for the best-interest factors in R.C. 3109.04, the guardian ad litem had no obligation to address them specifically or individually. The statute directs a trial court to consider those factors. In his report and testimony, the guardian ad litem explained the investigation that he had conducted, provided the trial court with pertinent information to assist in its decision making, and recommended that Father receive an extra afternoon of parenting time with Mother retaining legal custody. We see no abuse of discretion in the trial court's considering this information.

**{¶ 23}** Finally, we note that Mother's objections to the guardian ad litem's performance primarily concerned his investigation of allegations that Father had abused A.M. by engaging in acts including slapping the child and hitting his shoulder. The guardian ad litem testified at length about these allegations and his inquiry into them. The

trial court noted that the guardian ad litem had spoken to A.M.'s counselors and a detective and had reviewed a "44-page police report, the videos provided by both parents, Father's polygraph results, and A.M.'s medical records." (January 25, 2021 judgment at 8-9.) The record reflects that law enforcement and children services investigated the allegations but took no action. Polygraph results indicated that Father answered truthfully when he responded "no" to questions about whether he ever had slapped, punched, struck, or intentionally injured the child. (October 29, 2018 report at 4.) The trial court noted that A.M.'s counselors reported the child being "confused" about what had happened and sometimes recanting the allegations. (*Id*. at 15.) In her own supplemental objections, Mother acknowledged that A.M. "has significant confusion" about whether Father ever abused him. (May 11, 2020 supplemental objections at 28.) Having reviewed the record, we are unpersuaded by Mother's argument that the trial court erred in considering the guardian ad litem's testimony. We also reject Mother's argument that the trial court abused its discretion in failing to limit Father's use of corporal punishment. For his part, Father denied using corporal punishment. Based on the state of the evidence, the trial court determined that Mother had not proven the need for such an order. (January 25, 2021 judgment at 24-25.) We note too that the trial court carefully reviewed and considered the abuse allegations when awarding Father increased parenting time. (*Id*. at 31-32.) The second assignment of error is overruled.

{¶ 24} In her third assignment of error, Mother asserts that the trial court erred in ordering her into a position making her legally responsible for Father's actions in relation to musical-performance contracts she executes on behalf of their child.

{¶ 25} Mother's argument concerns the trial court's determination that Father is

entitled to take A.M. to musical performances and to supervise those performances when they occur during Father's parenting time. Mother explains that such performances result from contracts she enters into on A.M.'s behalf. Mother notes that she is responsible for those contracts being performed. She fears that Father might breach the contracts, thereby subjecting her to potential financial liability. She asks us to reverse and remand the trial court's judgment "with instructions that Father may not interfere with Mother's contractual obligations during any performance Mother contracts on behalf of A.M."

{¶ 26} Once again, we see no abuse of discretion in the trial court's resolution of the foregoing issue. As Father correctly notes, nothing in the trial court's ruling obligates Mother to schedule performances during his parenting time. If Mother elects to do so, then she makes herself legally responsible for Father's actions in relation to A.M.'s performance of such contracts. We recognize that A.M. might miss some performance opportunities if Mother chooses to forego scheduling them during Father's parenting time. But the trial court did not act unreasonably in refusing to allow Mother to supervise and control what A.M. does and how he does it during Father's parenting time. We note too that nothing in the trial court's ruling precludes Mother from being present during performances that occur during Father's parenting time. The third assignment of error is overruled.

{¶ 27} In her fourth assignment of error, Mother contends the trial court abused its discretion "by ruling inconsistently with itself" and violating the doctrine of stare decisis. Her complaint is that the trial court held her in civil contempt while failing to hold Father in contempt "for the exact same behavior." More specifically, Mother notes that the trial court overruled a motion to hold Father in contempt for a parenting-time violation while

-14-

sustaining two motions Father filed to hold her in contempt for the same thing. Mother reasons that stare decisis compelled the trial court to sustain her motion since it sustained Father's motions.

{¶ 28} Mother's argument lacks merit. Although the three contempt motions at issue all involved alleged parenting-time violations, the facts underlying the motions were not the same. Father's two motions alleged that Mother had violated a court order by failing to provide him with scheduled parenting time and taking A.M. to out-of-state performances instead. In her motion, Mother alleged that Father had violated a court order by prohibiting her from taking the child to school the morning after she returned home from a vacation. The facts underlying the parties' contempt allegations plainly were not the same. It does not follow that the trial court ruled inconsistently with itself and violated stare decisis simply because it overruled Mother's motion and sustained Father's motions. "[S]tare decisis commands that a court should not lightly overrule its own precedential authority." *State v. Buelow*, 2d Dist. Montgomery No. 24570, 2012-Ohio-832, ¶ 15. The doctrine has no applicability to the trial court's resolution of the parties' contempt motions. The fourth assignment of error is overruled.

{¶ 29} In her fifth assignment of error, Mother addresses the merits of the trial court's ruling on the contempt motions mentioned above. With regard to Mother's contempt motion, she contends Father violated her court-ordered parenting time when she arrived at Father's house to pick up A.M. for school one morning and he failed to send the child with her.

{¶ 30} The record reflects that Mother agreed to allow Father to exercise parenting time while she vacationed in Mexico for a week. Mother testified that upon her return she

was supposed to pick up A.M. for school at 7:15 a.m. Mother claimed Father would not allow her to take the child to school. For his part, Father denied an agreement for Mother to take the child to school on the morning in question. Father claimed he had planned to take the child to school as he had been doing during Mother's absence. The trial court resolved the issue as follows:

Mother asserts in her objections that she established by clear and convincing evidence that Father was in contempt on this occasion because she gave Father additional parenting time while she was on vacation, and he was therefore required to relinquish the child to her that morning at 7:15 a.m. Father stated in his objection that he was exercising additional parenting time that morning and was not under a Court Order to return the child to Mother at her specified time.

Based on the foregoing, the Court does not find that Mother presented clear and convincing evidence that Father violated a Court order when he allegedly denied Mother parenting time the morning of March 7, 2018. Rather, the evidence presented shows that the parties had a miscommunication about who would take the child to school the morning of March 7, 2018. Mother emailed Father on February 24, 2018, detailing, among other things, the arrangements for her trip to Cancun, Mexico. (Defendant's Exhibit 12) Father responded via email on February 27, 2018, confirming that he would have A.M. for a week while Mother was on vacation and addressed other issues, at length. (Defendant's Exhibit 31) The record therefore shows that the parties agreed that Father would have

A.M. for a week but that the parties did not expressly agree to Mother taking A.M. to school the morning of March 7, 2018. Further, the Court does not find it unreasonable that Father would take A.M. to school on a Monday morning after having slept there the preceding Sunday night.

(January 25, 2021 judgment entry at 12-13.)

{¶ 31} We see no abuse of discretion in the trial court's ruling. The disputed "parenting time" amounted to a drive from Father's house to A.M.'s school. Father admitted that Mother had emailed him before the vacation and told him that she would pick the child up for school at 7:15 that morning. Father's responsive email did not say anything to the contrary. (Tr. Vol. III at 1002-1006.) Even if we accept that Father did not explicitly agree to Mother transporting the child that morning, the fact remains that she was home from her vacation and the morning of March 7, 2018 was her court-ordered parenting time. Under these circumstances, we see no real justification for Father's refusing to allow A.M. to go with Mother. On the other hand, the record reflects a de minimus parenting-time deprivation consisting of one ride to school. On appeal, Mother objects to not being given "any later opportunity to take A.M. to school during time [Father's] parenting time." (Appellant's brief at 27.) She contends the trial court should have held Father in civil contempt with a "purge condition" obligating him to allow her to transport A.M. to school one morning during his parenting time. (Id. at 29.) In our view, the trial court did not act unreasonably in refusing to issue such an order.

{¶ 32} We also see no abuse of discretion in the trial court's decision to find Mother in civil contempt for interfering with Father's parenting time. Mother's actions involved twice scheduling performances for A.M. during Father's parenting time, which was

supposed to be from 10:00 a.m. Saturday until 10:00 a.m. Sunday. On one occasion, Mother scheduled a last-minute appearance for A.M. on the television show "Fox and Friends." As a result, Mother unilaterally changed Father's parenting time to start at 6:30 p.m. on Saturday until 6:30 p.m. on Sunday. A similar situation occurred shortly thereafter, when Mother took advantage of a last-minute opportunity and scheduled A.M. to appear on the television program "American Idol" during Father's parenting time. Mother again allowed Father to have make-up parenting time after the event. Based on the evidence presented, the trial court found Mother in civil contempt, reasoning:

> Mother's arguments are not well taken. The Order dated March 12, 2019 was specific. Unless otherwise agreed by the parties, Father was ordered to have parenting time from 10:00 a.m. until 10:00 a.m. for 24 consecutive hours once a week for four weeks. Based on the work schedules of the parties and A.M.'s school schedule, the only feasible time to comply with this Order was 10:00 a.m. on Saturday to 10:00 a.m. Sunday. Both parties expected Father to begin his four weeks of 24 consecutive hours of parenting time on Saturday April 20, supra.

> Despite the Order and agreement by the parties and their counsel, Mother scheduled performance events for A.M. to take place on Saturday, April 20, 2019 and Saturday April 27, 2019. There [sic] performances were scheduled in contravention with Father's Court-ordered parenting time and without Father's agreement. Although Father was able to exercise his parenting time during alternate time slots, this does not negate the fact that Mother willfully violated the Court's Order that specifically ordered parenting

time from 10:00 a.m. to 10:00 a.m. for four weeks. The Court finds that Mother's failure to follow the Court's Order on April 20, 2019, and April 27, 2019, were willful contempts.

(January 25, 2021 judgment entry at 11.)

{¶ 33} Upon review, we see no abuse of discretion in the foregoing reasoning. We also see no abuse of discretion in the trial court's "purge" condition requiring Mother to comply with parenting-time orders for 12 months. This court has recognized that a trial court may use civil contempt to compel compliance with court-ordered parenting time. *See*, *e.g.*, *Summe v. Summe*, 2d Dist. Montgomery Nos. 11452, 11474, 1990 WL 78590 (June 6, 1990), *2 (recognizing that a court "can compel future compliance with the court-ordered visitation schedule and, thus, allow the contemnor to purge himself of any contempt"); *C.G. v. C.L.*, 8th Dist. Cuyahoga No. 90341, 2008-Ohio-3135, ¶ 28 ("[S]everal courts have recognized that '[w]hile the trial court cannot fashion a remedy to return past visitations to the defendant by allowing the plaintiff to purge herself of contempt, the trial court can compel future compliance with the visitation schedule established by the court order, thus, allowing plaintiff to purge herself of any alleged contempt.' "). The fifth assignment of error is overruled.

{¶ 34} In her sixth assignment of error, Mother claims the trial court erred in giving Father final decision-making rights with regard to A.M.'s activities. In her statement of assignments of error, she cites page 30 of the trial court's opinion as the basis for her argument. On the cited page, the trial court ruled that whichever parent is exercising parenting time during one of A.M.'s performances "will be the parent to transport the child to and from the performances and will be the parent in charge of the child at the

performances unless both parties agree otherwise." Mother makes no specific argument under her sixth assignment of error, and we see nothing unreasonable about allowing the parent who is exercising parenting time to be "in charge" of A.M. during that time. The sixth assignment of error is overruled.

{¶ 35} Having overruled Mother's assignments of error, we affirm the judgment of the Montgomery County Common Pleas Court, Juvenile Division.

. . . . . . . . . . . . .


DONOVAN, J. and WELBAUM, J., concur.


Copies sent to:

Julia C. Kolber
Sara Moore
Hon. Anthony Capizzi