[Cite as *Maran v. Clark*, 2022-Ohio-3175.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| JESSIE MARAN | C.A. No.    21CA011796 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ELIZABETH CLARK | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellee | CASE No.    11JG31813 |

DECISION AND JOURNAL ENTRY

Dated: September 12, 2022

---

CARR, Judge.

{¶1}    Plaintiff-Appellant Jessie Maran ("Father") appeals the judgment of the Lorain County Court of Common Pleas, Juvenile Division.  This Court affirms.

I.

{¶2}    Father and Defendant-Appellee Elizabeth Clark ("Mother") were never married but have one minor child, R.M., together.  At the time of trial in this matter, R.M. was about to turn 13.  In February 2011, an order was issued granting Father parenting time with R.M.  In August 2017, Father's parenting time was adjusted but Mother remained the legal custodian and residential parent.

{¶3}    In February 2018, Father filed a motion to reallocate parental rights and responsibilities.  Father sought to be named the residential parent or to have a shared parenting plan put into place.  In October 2018, Father dismissed his motion.  However, shortly thereafter, he refiled it, again seeking to be named the residential parent and legal custodian or to have a

shared parenting plan adopted. Father also requested that a guardian ad litem ("GAL") be appointed. A GAL was appointed and, over the course of the litigation, he issued a report and two supplemental reports. An in-camera interview was also conducted with R.M.; unfortunately, a copy of that interview is not in this Court's record.

{¶4} Ultimately, the matter proceeded to trial. Thereafter, the trial court issued a decision granting in part and denying in part Father's motion. The trial court concluded that a change in circumstances had occurred, that "the harm likely caused by the change of environment is outweighed by the advantages of the change of environment to the child," that it was not in R.M.'s best interests for her to move her primary residence to Father's, and that Father did not meet his burden of proof "that the likely harm caused by the change of residence is outweighed by the advantages of the change to the child." The trial court retained Mother as the residential parent and legal custodian but extended Father's parenting time.

{¶5} Father has appealed, raising three assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT'S FAILURE TO FIND THAT A MODIFICATION OF THE PRIOR CUSTODY ORDER WAS IN THE BEST INTEREST OF THE MINOR CHILD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶6} Father argues in his first assignment of error that the trial court's decision not to make Father the residential parent was against the manifest weight of the evidence.

{¶7} "While the trial court's decision as to the allocation of parental rights will not be reversed absent an abuse of discretion, this Court applies the manifest weight of the evidence standard to review the trial court's factual findings." *Herron v. Herron*, 9th Dist. Summit No. 29683, 2021-Ohio-2223, ¶ 24. When reviewing the manifest weight of the evidence this Court

"weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

{¶8} R.C. 3109.04(E)(1)(a) states:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶9} The trial court found that the provisions of R.C. 3109.04(E)(1)(a) were met, that the changes in R.M.'s grades and residence constituted a change of circumstances, that "the harm likely caused by the change of environment [was] outweighed by the advantages of the change of environment to the child[,]" that it was not in R.M.'s best interest to move her primary residence, and that Father did not meet his burden of proof "that the likely harm caused by the change of residence is outweighed by the advantages of the change to the child."

{¶10} Here the trial court made contradictory findings. First it found that R.C. 3109.04(E)(1)(a)(iii) ("The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.") was satisfied and then found that Father failed to meet his burden on that point. While such a contradiction is concerning to this Court, given the requirements of the statute, which mandate that, before the residential parent is altered, it must be demonstrated that a modification is in the child's best interest *and* one of the three prongs is satisfied. *See* R.C. 3109.04(E)(1)(a). Accordingly, even assuming that the trial court misspoke when it indicated that Father failed to meet his burden as to R.C. 3109.04(E)(1)(a)(iii), the trial court unequivocally found that it was not in R.M.'s best interest to live primarily with Father.

{¶11} As to the child's best interest, R.C. 3109.04(F)(1) provides that:

In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶12} At trial, Father testified that he brought the motion because of Mother's moves and the changes that those moves brought to R.M.'s schooling. Father was worried about the lack of stability that that created for R.M. In addition, Father was troubled by Mother's choices in the men she dated.

{¶13} Mother testified that, since the summer of 2017, she resided in three places. In the summer of 2017, she lived in Vermilion with her parents. Mother moved in the fall of 2017 to Amherst and then moved to LaGrange in May 2020.

{¶14} In 2017, Mother dated Jeffrey B. for a few months. Jeffrey B. never lived with Mother and Mother ended their relationship when she became concerned about Jeffrey B.'s drug use. Shortly after Mother moved to Amherst, she began dating David R. and he then moved in with her. He only lived with Mother, Mother's son, who is not related to Father, and R.M. for a

couple of months and then David R. and Mother broke up. Mother then began dating Tyler F. in late 2017. Tyler F. just got out of prison when Mother started dating him. Mother was aware at the time that Tyler F. had a felony theft conviction. In addition, after Tyler F. got out of prison, he was fired from his job for stealing checks. Tyler F. moved in with Mother in February 2018 and they broke up in February 2019. Mother learned after the breakup that Tyler F. developed a drug problem. In September 2019, Mother began dating Michael V. In May 2020, Mother, Mother's son, and R.M. moved in with Michael V. in LaGrange. Mother testified that R.M. got along with the people in the household. Mother was engaged to Michael V. at the time of trial. Mother acknowledged that she has made some poor choices in the men she has dated.

{¶15} R.M. attended fifth grade in Vermilion schools, sixth grade in Amherst schools, and seventh grade in Keystone schools. An IEP was developed for R.M. while she was in Vermilion schools due to a learning disability in reading. Beginning in March 2020, R.M. began online schooling due to the pandemic. At the time she was finishing sixth grade in Amherst schools. Around that time, Mother stopped working to help her children with online schooling. Because of the pandemic and based upon R.M.'s preference, Mother opted to have R.M. continue in online schooling for the 2020-2021 school year, but in Keystone schools. R.M.'s grades in both Vermilion and Amherst schools were very good; however, R.M.'s grades took a dramatic downward turn when she transferred to Keystone schools. Mother admitted that R.M. has missed quite a few school assignments. Mother agreed that Father does a good job of helping R.M. with her schoolwork during his limited parenting time. Mother believes that going back to in person schooling would help R.M. Mother planned to enroll R.M. in in person schooling for the following school year.

{¶16} Mother acknowledged that she did not always keep Father informed about matters concerning R.M., including her schooling, medical appointments, and counseling appointments. Mother herself has been diagnosed with generalized anxiety disorder and major depressive disorder. She has attended counseling on and off over the years and testified that she planned to return to counseling when the children were back to in person schooling. Mother also planned to begin working again.

{¶17} Father presented his own testimony and the testimony of a few other witnesses. The other witnesses testified that Father had a good relationship with R.M. and about the activities Father and R.M. would do. One of the witnesses was Father's brother who lives in Olmsted Township across the street from Father. Father's brother has a daughter about R.M.'s age and the two enjoy spending time together.

{¶18} At the time of trial Father had lived in Olmsted Township for about a year and a half. Father lives alone aside from when he has parenting time with R.M. Prior to that, Father lived in North Ridgeville for about two years. He lived there with the homeowner and the homeowner's girlfriend. Father is a software engineer for a trucking company. He started that job in 2018. Since the pandemic he has primarily worked from home. Father spends Wednesday evenings and every other weekend with R.M. In addition, he has four weeks of parenting time in the summer.

{¶19} Father discussed that there had been issues with getting to talk to R.M. every day on the phone. Mother indicated that R.M. does not always want to talk to Father. Mother asserted that if Father could not get ahold of R.M. he would call the police and have the police come out to Mother's home to do a welfare check. Father, however, also asserted that Mother had called the

police on him in the past. Father maintained that Mother failed to provide him with the appropriate details about vacations.

{¶20} Father expressed concern over Mother's choices in men. He testified that Mother brings the men around R.M. too quickly, R.M. gets attached, and then the men end up leaving and upsetting R.M. Aside from Tyler F., and his criminal history, Father was also concerned over Michael V., whom Father claimed lost his job due to opioid abuse and had been arrested for domestic violence. Mother explained that Michael V. was taking Adderall without a prescription due to the long hours he worked and failed a drug test at work which resulted in him losing his job. Mother maintained that while Michael V. was arrested for domestic violence, the charges were dropped. Father also believed that Mother was using drugs; however, both parties tested negative for drugs. Father admitted that he had no knowledge that any of the men in Mother's life had ever harmed R.M. or brought her into contact with drugs.

{¶21} Father was also worried about the lack of stability in R.M.'s schooling. He testified that if he were to be named the residential parent, R.M. would go to in person schooling in Olmsted Falls. Father discussed the times that he had to help R.M. with her schoolwork despite only having limited time to spend with her. While Father does not mind helping R.M., he expressed frustration that Mother does not keep him informed about what R.M. needs to have done for school. Nonetheless, Father did meet with R.M. online to help her with her schoolwork. Father contended that there were also issues with schooling that occurred while R.M. was in Vermilion and Amherst; he averred that R.M. received a truancy warning letter from both districts.

{¶22} Both Father and Mother acknowledged that they have difficulties communicating with each other. Father also admitted that there were times when they had to resolve parenting time disputes via court action as opposed to between themselves. Mother expressed concerns

about the way Father talks about women. Mother averred that Father has called her expletives in text messages. In her deposition, which was admitted as an exhibit, Mother also indicated that Father discussed inappropriate things with R.M. According to Mother, Father told R.M. that he was going to take R.M. away from Mother and that Mother was using drugs. The GAL also indicated in his report that Father spoke poorly of Mother to R.M. Nonetheless, Mother testified that she was open to Father spending more time with R.M.

{¶23} At the beginning of trial, the trial court discussed the GAL reports with the parties. The trial court stated that it believed that it could just read the reports. The trial court noted that it was aware that Father disagreed with some of the GAL's statements. Neither side registered objections to the trial court reading the GAL reports.

{¶24} At the end of trial, the trial court recited some of the GAL's recommendations. The trial court stated that the GAL recommended that Mother should retain custody and Father should have increased parenting time. The trial court indicated that R.M. was amenable to spending more time with Father. In addition, the GAL recommended that the parties should continue to communicate by Our Family Wizard, that R.M. continue counseling, and that the parents engage in counseling to learn how to better communicate. The GAL also indicated that he did not believe that shared parenting was workable for the parties. After swearing in the GAL, the GAL testified that the trial court had accurately expressed the GAL's recommendations. The GAL averred that he had concerns that the parents' difficulties communicating were impacting R.M. and that he hoped that continuing R.M. in counseling would help her cope with that. The GAL also expressed hope that, if Father had more parenting time with R.M., he would be more informed as to what was happening with her. Both parties' attorneys declined to question the GAL. All of the GAL

reports are in the record. There appears to be no dispute that the trial court followed the GAL's recommendations.

{¶25} On appeal, Father focuses on the trial court's conclusion that Father did not meet his burden of proof to demonstrate that the harm likely caused by the change of residence was outweighed by the advantages of the change. As we pointed out above, the trial court's judgment entry contradicts itself on this point. Nonetheless, even if we were to assume that Father *did* meet his burden, making Father the residential parent still must be in R.M.'s best interest before the change is authorized under the statute. *See* R.C. 3109.04(E)(1)(a). Father centers his argument on the stability and community he can provide R.M. and the instability Mother's moves have brought as well as her poor choices in men.

{¶26} In its judgment entry, the trial court discussed the factors in R.C. 3109.04(F)(1). Father mentions the trial court's findings as to each of the factors but does not really appear to find fault with most of them. Father appears to contest the trial court's findings as to R.C. 3109.04(F)(1)(d), which relates to the child's adjustment to home, school, and community. Father focuses on R.M.'s dramatic decline in grades following the move to LaGrange and Keystone schools. Father asserts that the trial court's statement that the pandemic may have contributed to the deterioration in R.M.'s grades was not supported by the record. Father instead believes that R.M.'s grades reflect her difficulty in adjusting to the move to LaGrange and the lack of stability in her life. First, there is no definitive evidence in the record as to the cause of R.M.'s poor performance at school. Nonetheless, there is evidence to support the trial court's hypothesis that the pandemic may have contributed to it. Mother testified that she believed that R.M. performed better when attending in person schooling and the record is clear that R.M. began online schooling

due to the pandemic. Mother also testified that she planned to have R.M. back in in person schooling the following school year.

{¶27} This Court will only briefly address one other factor, R.C. 3109.04(F)(1)(b), related to the wishes and concerns of the child as expressed to the court. The trial court noted it had conducted an in-camera interview with the child and stated that R.M. expressed that she loved both parents, had some difficulties communicating with Father, and that R.M. found Father helpful with her schoolwork. However, this Court cannot fully evaluate this factor as Father has failed to provide this Court with a transcript of the interview. *See In re M.W.*, 9th Dist. Summit No. 23912, 2008-Ohio-1049, ¶ 22.

{¶28} There is no doubt that Father has been more stable than Mother. Even Mother admits that she has made poor choices with respect to men that she brought into her and R.M.'s lives. However, Mother is now engaged to a man and it would not be unreasonable for the trial court to believe that this relationship might be more long lasting, leading to fewer changes in R.M.'s life. Further, there was no evidence presented that R.M. suffered any harm from the men brought into R.M.'s life, aside from her disappointment when some of the relationships terminated. As to R.M.'s schooling, the downturn in performance is understandably concerning to Father and this Court appreciates that Father is frustrated with being unable to help his daughter more. Nonetheless, even the GAL noted in his report that it is unclear what caused R.M.'s grades to suffer. R.M. did previously change school district and her grades did not suffer on that occasion. We cannot say that it was unreasonable for the trial court to conclude that R.M.'s poor grades might be connected to the pandemic and online learning. If the trial court's hypothesis is correct, that can be tested by retaining Mother as the residential parent and seeing if R.M.'s grades improve when she returns to in person schooling.

{¶29} We are mindful that school performance is not the only factor to consider in evaluating the best interests of a child. The child's wishes and concerns, R.C. 3109.04(F)(1)(b), are also taken into account, in addition to several other factors. Those wishes cannot be fully reviewed by the Court in light of the lack of transcript. Father points to the trial court's statement that the trial court found it not to be in the best interest of R.M. to live primarily with Father as it would be another change for R.M. and notes that Mother has been the cause of the child's repeated moves in both schooling and housing. This is undoubtedly true, but the trial court also proceeded to examine the best interest factors and the reports of the GAL. While not specifically mentioned by the trial court, the trial testimony, and the report of the GAL support that Father has talked negatively about Mother to R.M., while the same cannot be said about Mother. The GAL pointed out in his report that R.M. is stressed by the family dynamics and is caught in the middle.

{¶30} After a thorough review of the record, we cannot say that Father has demonstrated the trial court's retention of Mother as the residential parent is unreasonable. Father's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO GRANT SHARED PARENTING, INCLUDING THE FAILURE TO ADOPT FATHER'S PROPOSED SHARED PARENTING PLAN[.]

{¶31} Father argues in his second assignment of error that the trial court erred and abused its discretion in failing to adopt Father's shared parenting plan.

{¶32} "If only one parent requests shared parenting and files a proposed plan, the court may approve the plan if it is in the best interest of the children." (Internal quotations and citations omitted.) *Michael v. Michael*, 9th Dist. Wayne No. 20AP0010, 2021-Ohio-992, ¶ 13. In determining the best interest of the child, the trial court must consider the factors in R.C.

3109.04(F)(1), previously detailed above. *See id.* "A request for shared parenting also triggers additional best-interest factors that a court must consider under R.C. 3109.04(F)(2) and 3119.23." *Id.* "Those factors include the ability of each parent to cooperate and make joint decisions, the ability of each parent to encourage a positive relationship between the child and the other parent, any history of abuse by either parent, the geographic proximity of the parents to each other, and the recommendations of the guardian ad litem." *Id.*, citing R.C. 3109.04(F)(2)(a)-(e).

{¶33} On appeal, Father maintains that the trial court based its determination primarily on the GAL's report, which was not admitted into evidence. Father asserts that if the GAL report is discounted, the record would support granting the shared parenting plan. We cannot agree.

{¶34} Even assuming this Court were to agree that the GAL reports should not be considered, the parties' own testimony and the testimony of the GAL supported the trial court's conclusion that shared parenting was not in R.M.'s best interests. As to R.C. 3109.04(F)(2)(a), the trial court found the parties have a limited ability to cooperate and make joint decisions with respect to R.M. Mother and Father acknowledged in their testimony that they had difficulty communicating. In addition, there was evidence that Mother and Father have in the past needed to involve the trial court in order to resolve parenting time disputes. With respect to R.C. 3109.04(F)(2)(b), the trial court determined the parents' relationship had deteriorated to the point that they found it difficult to encourage the sharing of love and affection between the child and the other parent. This finding is supported by Mother's deposition testimony, which was admitted as an exhibit. Mother testified that Father has said negative things about Mother to R.M., including telling the child that Mother was on drugs. Mother also asserted that Father told R.M. that he was going to take her away from Mother. The trial court found that the factors in R.C. 3109.04(F)(2)(c) and (d) were not an issue. As to the factor in R.C. 3109.04(F)(2)(e), the recommendation of the

GAL, the trial court concluded that it did not favor shared parenting. Even without examining the GAL reports, we can say that this factor is supported by the record. We note that the GAL did briefly testify at trial and confirmed that the trial court had accurately stated his recommendations. The GAL stated at trial that he did not believe shared parenting was workable for the parties.

**{¶35}** Father has not demonstrated that the trial court abused its discretion in failing to adopt a shared parenting plan. Father's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN CONSIDERING THE GUARDIAN AD LITEM REPORTS AS THEY WERE NOT ADMITTED AS EXHIBITS AT THE TIME OF THE TRIAL[.]

**{¶36}** Father argues in his third assignment of error that the trial court abused its discretion in considering the GAL reports when they were not admitted into evidence at trial. Specifically, Father maintains that the trial court's actions violate Sup.R. 48.06(C)(2).

**{¶37}** Sup.R. 48.06(C)(2) states, "[t]he court shall consider the recommendation of the guardian ad litem in determining the best interest of the child only when the report or a portion of the report has been admitted as an exhibit."

**{¶38}** First, we note that Courts have concluded that "Sup.R. 48 is an administrative directive that lacks the force of law and creates no individual substantive or procedural rights." *In re A.M.*, 2d Dist. Montgomery No. 29042, 2021-Ohio-3691, ¶ 21; *see also Short v. Rhodes*, 6th Dist. Wood No. WD-20-066, 2021-Ohio-1845, ¶ 72; *Sherwood v. Eberhardt*, 9th Dist. Lorain No. 18CA011286, 2019-Ohio-4213, ¶ 21; *In re K.G.*, 9th Dist. Wayne No. 10CA0016, 2010-Ohio-4399, ¶ 11.

**{¶39}** Here, at the beginning of trial, a discussion concerning the consideration of the GAL reports occurred:

[Mother's counsel:] In terms of, I guess, logistics, with regard to the reports, wondering how much testimony we need to get out of, say, the guardian for the reports, or if the Court's just going to read that and we can kind of –

[Trial court:] I believe I can just read it, and unless either one of you have a major objection about the factual nature of it, I don't see any need to put him on.

[Mother's counsel:] Okay.

[Trial court:] Perhaps I'm wrong. But I don't think much has changed since we've all been in discussions with this, so.

[Mother's counsel:] Okay.

[Trial court:] That should cut things down tremendously. And the Court notes, Mr. Maran, because I think it's important to note that you have definitely disagreed with some of the statements that [the GAL] has made, and the Court's well aware of all of that, because – so I at least know where you're coming from, even if he doesn't testify. So we're good. I know your objections to some of the things that have been said. Okay?

All right. [Father's counsel], you are the moving party. Your first witness please.

Neither side objected to the trial court's plan to read and consider the GAL reports.

{¶40} At the end of trial, the trial court then put several of the GAL's recommendations on the record, as discussed above. The GAL then provided a short amount of testimony under oath. The parties were then given the opportunity to question the GAL, and both sides declined to do so.

{¶41} Given the foregoing, we can only conclude that Father has forfeited his ability to challenge the trial court's consideration of the GAL reports. *See In re C.C.-L*, 9th Dist. Summit No. 28666, 2017-Ohio-9296, ¶ 20; *Marsico v. Skrzypek*, 9th Dist. Lorain No. 13CA010410, 2014-Ohio-5185, ¶ 6. ("It is well settled that the failure to timely object to a possible error results in a forfeiture of the issue for purposes of appeal."). While a party failing to object in the trial court can argue plain error on appeal, Father has not done so, and this Court will not create an argument

for him. *Rivenbark v. Discount Drug Mart*, 9th Dist. Medina No. 17CA0089-M, 2018-Ohio-4072, ¶ 24.

**{¶42}** Father has failed to demonstrate that the trial court committed reversible error in considering the GAL reports. Father's third assignment of error is overruled.

## III.

**{¶43}** Father's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

WAYNE R. NICHOL, Attorney at Law, for Appellant.

RICHARD RAMSEY, Attorney at Law, for Appellee.