[Cite as *In re Z.E.W.*, 2024-Ohio-5120.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | |
|---|---|
| IN THE MATTER OF: Z.E.W. AND M.C.W. | : |
| | : |
| | :    C.A. Nos. 2024-CA-36; 2024-CA-37 |
| | : |
| | :    Trial Court Case Nos. 2021-I-00019-0G; |
| | :    2024-I-00020-0G |
| | : |
| | :    (Appeal from Common Pleas Court- |
| | :    Juvenile Division) |
| | : |

. . . . . . . . . . .

O P I N I O N

Rendered on October 25, 2024

. . . . . . . . . . .

CARL J. BRYAN, Attorney for Appellant

ALFRED WILLIAM SCHNEBLE, III, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Mother appeals from the judgment of the Greene County Court of Common Pleas, Juvenile Division, which granted Father the right to claim their children as

dependents for tax purposes, reallocated child support, and found Mother in contempt of a court order. For the reasons that follow, the judgment of the trial court will be affirmed.

## I. Facts and Procedural History

{¶ 2} Z.E.W. and M.C.W. were born from the relationship of Mother and Father, who were never married to each other. In April 2022, when the children were six and five years old, Mother and Father agreed to a parenting order. As pertinent to this case, Mother was designated legal custodian and residential parent, and Father was granted parenting time in accordance with the Greene County Standard Order of Parenting Time. In addition, the order stated that Mother was entitled to claim the minor children as dependents for tax purposes, and Father was to pay child support.

{¶ 3} According to the record, the parties struggled to co-parent, and in June 2023, Father filed a motion for contempt and modification of the agreed entry. As relevant to this appeal, Father alleged that Mother was in contempt for deviating from the parenting order by keeping the girls longer than permitted on the first week of summer break. He also asked the court to recalculate child support due to changes in daycare expenses and his personal finances and to reallocate the tax exemption to allow him to claim one of the children as his dependent.

{¶ 4} The magistrate conducted a hearing in November 2023 at which both Mother and Father testified. After considering the testimony of the parties and exhibits, the magistrate found Mother in contempt, recalculated Father's child support obligation, and granted Father's request to claim one child as a dependent for tax purposes. Mother filed objections to the magistrate's decision that were overruled by the trial court in May 2024.

Mother has filed a timely appeal that raises three assignments of error.

## II.    Contempt

{¶ 5} In her first assignment of error, Mother asserts that the trial court erred by finding her in contempt of the parenting order because she had failed to return the children to Father after the first week of summer and instead took them to her mother's house.

{¶ 6} R.C. 2705.031(B)(2) allows a person who has rights pursuant to a parenting time order to "initiate a contempt action for a failure to comply with, or an interference with, the order or decree." "[T]he purpose of the law of contempt is to ensure the effective administration of justice and to secure compliance with the court's lawful orders." 17 Ohio Jur.3d, Contempt, § 2. The essential element of a contempt proceeding is that the individual facing the contempt charge has obstructed the administration of justice in some way. *Martin v. Martin*, 2008-Ohio-6336, ¶ 20 (2d Dist.).

{¶ 7} "This court has recognized that a trial court may use civil contempt to compel compliance with court-ordered parenting time." *In re A.M.*, 2021-Ohio-3691, ¶ 33 (2d Dist.). Civil contempt sanctions involve conditional penalties designed for coercive or remedial purposes and are employed to compel obedience to a court order. *Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd.*, 2014-Ohio-4254, ¶ 15.

{¶ 8} A trial court's decision to find a party in contempt is reviewed for an abuse of discretion. *Burks v. Burks,* 2019-Ohio-4292, ¶ 22 (2d Dist.). To constitute an abuse of discretion, a trial court's action must be arbitrary, unreasonable, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232 (1984).

{¶ 9} In 2022, Mother and Father agreed to follow the Greene County Standard

Order of Parenting Time, which sets out specific rules for summer parenting time. The order states:

> During the children's summer break from school, the parents shall begin exercising parenting time on a week-to-week basis. Summer break begins at **5:00 p.m. the day school recesses**, and ends at 5:00 p.m. the day before school recommences.
>
> **Weekly exchanges shall be conducted on Sundays at 5:00 p.m.** In even-numbered years, Parent 1 shall take the first week of summer parenting time; in odd-numbered years, Parent 2 shall take the first week of summer parenting time.

(Emphasis added.)

{¶ 10} In 2023, Mother was the parent who was to exercise parenting time with the children during the first week of summer vacation. According to the language of the standard order, summer parenting time began (and Mother would take physical custody of the children) at 5:00 p.m. on last day of school. Drop off for the weekly exchange was to be conducted at 5:00 p.m. on Sunday. However, Mother did not return the children to their father on Sunday afternoon, but instead kept them an additional week, giving her, essentially, a week-and-a-half of parenting time at the beginning of the summer. She argues that the phrase "week-to-week basis" should be interpreted as meaning Sunday to Sunday. Under Mother's reading of the order, the first "week" of summer parenting time was actually a week-and-a-half: Thursday through the second Sunday.

{¶ 11} On the other hand, Father argued in the juvenile court and now argues on

appeal that the first week of summer parenting time started at 5:00 p.m. Thursday when school recessed and should have ended with drop-off on Sunday at 5:00 p.m. His interpretation is the opposite of Mother's, that the first "week" of summer parenting time was short: Thursday through the first Sunday.

{¶ 12} The trial court found in Father's favor, holding:

[T]he intent of the Standard Order is clear – in odd numbered years, Parent 2 should have had the children from the day school recessed until Sunday at 5pm. Given schools recess on different days, the first week may not be a *full* week; however, the time period is sufficiently defined. Mother should have had the children from the day school recessed at 5pm until Sunday at 5pm; Father should have had the children . . . thereafter.

(Emphasis in original.) Judgment at 3.

{¶ 13} Mother argues that the trial court's interpretation of the order does not make sense because, "[w]ere school to recess on a Friday, for instance, 'week one' would be nothing more than a 'weekend[.]' " Although she is right, her version also cuts the opposite way: "week one" could be, in theory, almost two weeks if school recessed on a Tuesday. The order seemed to consider the irregularity of the first week of summer break, as it alternated years: Parent 1 was assigned even-numbered years, and Parent 2 got the odd ones.

{¶ 14} Ultimately, we conclude that the trial court did not abuse its discretion when it held Mother in contempt. Its interpretation of the order as to summer parenting time was

reasonable, and we cannot conclude that finding Mother in contempt was arbitrary, unreasonable, or unconscionable. The first assignment of error is overruled.

### III.     Recalculation of Child Support

**{¶ 15}** In her second and third assignments of error, Mother argues that the trial court erred when it modified the child support order (third assignment) and awarded Father a dependent child tax exemption (second assignment). We consider these assignments together because of their related nature.

**{¶ 16}** To modify an existing child support order, the trial court must find that a substantial change of circumstances has occurred, which R.C. 3119.79(A) defines as a ten-percent deviation from the amount of child support previously ordered. *Abrams v. Abrams*, 2017-Ohio-4319, ¶ 40. "R.C. 3119.79(A) clearly provides that to determine whether a 10 percent difference exists, the court must compare the recalculated guidelines amount to the amount of child support required to be paid pursuant to the existing child support order." (Citations omitted.) *Mossing-Landers v. Landers*, 2016-Ohio-7625, ¶ 34 (2d Dist.). A trial court's decision regarding child support-related obligations falls within the discretion of the trial court and will not be disturbed without a showing of an abuse of discretion. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997).

**{¶ 17}** According to the record, Father contacted the girls' daycare facility and discovered that they were no longer enrolled; their last day had been December 28, 2022. Due to the cessation of daycare expenditures, Father asked the trial court to adjust his monthly child support payments to reflect the decreased economic burden on Mother, who had paid those expenses.

{¶ 18} The most recent financial worksheet indicated that Father had a total monthly child support obligation of $940.96. His new obligation, without the childcare expenses, was $720.63, a difference of approximately 24% and much more than the 10% needed to be a "substantial change of circumstances" necessitating a recalculation of child support according to the law. The trial court did not abuse its discretion. The third assignment of error is overruled.

{¶ 19} Finally, in her second assignment of error, Mother asserts that the trial court erred by giving Father one of the two child tax credits. Mother argues that Father should not have even been eligible to ask for this change because she was the residential parent and "the parental right to claim minor children was solely Mother's previous to entering into the Agreed Order and Entry and it remained her right after." Appellant's Brief at 10.

{¶ 20} According to Mother, for the court to have modified the original order, it "was required to find: 1) a change in circumstances of the children or Mother, as the sole residential parent; and 2) that the modification is necessary to serve the best interest of the children." Appellant's Brief at 10. This argument seems to be based on R.C. 3109.04(E)(1)(a), but the controlling statute is R.C. 3119.82.

{¶ 21} "[W]henever a court issues, or whenever a court modifies, reviews, or otherwise reconsiders a court child support order, or upon the request of any party, the court shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes[.]" R.C. 3119.82. As this Court has noted in the past, the statute recognizes a presumption that the custodial parent will receive the tax exemption for dependent children, but a non-custodial parent

may be awarded an exemption upon a finding by the trial court that such an allocation furthers the best interest of the children. *Robinson v. Robinson*, 2023-Ohio-1233, ¶ 64 (2d Dist.).

{¶ 22} To help make the best interest determination, the statute sets forth several factors to consider, including: any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, eligibility for federal and state tax credits, and any other relevant factor. R.C. 3119.82. "Decisions on tax exemptions are within the discretion of the trial court and are reviewed for abuse of discretion." *Baker v. Baker*, 2013-Ohio-1816, ¶ 47 (2d Dist.).

{¶ 23} At the hearing, Father admitted that he originally agreed that Mother should have both tax exemptions, "but my financial situation has changed. I have a different job with a lower income. I used to a have job where I had access to a company car and to free fuel, and that's no longer the case." Hearing Tr. at 11. In terms of the evidence in the record, that is all the information we have. Nonetheless, we cannot say the trial court abused its discretion in awarding Father one of the tax credits. The court noted that it had considered the child support worksheet, which contained detailed information about the parties' financial situations and obligations, and it concluded that both Father and the children would benefit from the tax exemption. And while not explicitly stated, the juvenile court could have reasonably believed that the benefits Father would see from having more resources would trickle down to the children.

{¶ 24} Because the trial court's decision to grant Father a tax exemption was not arbitrary, unreasonable, or unconscionable, it did not abuse its discretion. The second

assignment of error is overruled.

## IV.    Conclusion

**{¶ 25}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and HUFFMAN, J., concur.